Perfecto **BARRANTES CABALCETA,** et al., Plaintiffs,

v.

**STANDARD FRUIT COMPANY,** et al., Defendants.

No. 87–0457–Civ.

United States District Court, S.D. Florida.

July 21, 1987.

Charles S. Siegel, Baron & Budd, Dallas, Tex., Louis S. Robles, Miami, Fla., for plaintiffs.

James E. Wilber, Bond, Shoeneck & King, Boca Raton, Fla., for Standard Fruit Co., Standard Fruit & Steamship Co. Castle and Cook.

Kimbrell, Hamann, Jennings, Womack, Carlson & Kniskern, P.A., Miami, Fla., Edward T. O'Donnell, Mershon, Sawyer, Johnston, Dunwoody & Cole, Miami, Fla., Gennaro A. Filice, III, Hardin, Cook, Loper, Engel & Bergez, Oakland, Cal., Charles J. Kalil, of counsel, Midland, Mich., for Dow Chemical Co.

Sheryll Martens Dunaj, Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., Miami, Fla., R. Burton Ballanfant, Houston, Tex., for Shell Oil Co.

### ORDER ON MOTION TO REMAND, MOTION TO DISMISS, AND RELATED MOTIONS

ATKINS, District Judge.

This cause is before the court on plaintiffs' Motion to Remand, and defendants' Motions to Dismiss for *Forum Non Conveniens,* Lack of Service of Process, Lack of Jurisdiction Over the Person, for Fraudulent Joinder, and More Definite Statement. The court has considered the pleadings submitted in this matter, the relevant law, and has heard oral argument. It is thereupon

ORDERED AND ADJUDGED as follows:

1. Plaintiffs' Motion to Remand is DENIED.

▇▇▇ The court finds that removal was proper pursuant to 28 U.S.C., section 1441(b), on the ground that none of the parties is a citizen of Florida and that diversity of citizenship is present.

I. *Principal Place of Business of Standard Fruit Company and Standard Fruit and Steamship Company*

The court's main inquiry in this case concerns whether the principal place of business of any of the defendants is Florida. If so, removal would have been improper pursuant to the "no local citizen" limitation of the removal statute, 28 U.S.C., section 1441(b), which provides:

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

A corporation is deemed to be a citizen of both the state of incorporation and the state of its principal of business for diversity purposes. 28 U.S.C., section 1332(c). To determine the principal place of business of a corporate party, the court must apply the "total activity" test. *Vareka Investments, N.V. v. American Investment Properties, Inc.,* 724 F.2d 907 (11th Cir.1984). The test actually incorporates two tests: the nerve center test, which focuses on the locus of managerial and policymaking functions in the corporation, and the place of activities test, which focuses on the locus of production or sales activities. *Id.* at 910.

The two tests are applied in different factual situations. The nerve center test is applied to determine the principal place of a corporation whose activities are scattered among several different states. *See Scot Typewriter Co. v. Underwood Corp.,* 170 F.Supp. 862 (S.D.N.Y.1959). The place of activities test is applied to determine the principal place of business of a corporation whose activities are basically bifurcated between two different states. *Homestead Log Co. v. Square D Co.,* 555 F.Supp. 1056 (D.Idaho 1983). Thus, the principal place of business of a corporation with significant administrative authority and activity in one state and lesser executive offices but principal operations in another state has been held to be the latter state, *Kelly v. U.S. Steel Corp.,* 284 F.2d 850 (3d Cir. 1960), and the principal place of business of

a corporation with its corporate headquarters in one state and its single activity in another will generally be in the state of its operations, *Lurie Co. v. Loew's San Francisco Hotel Corp.*, 315 F.Supp. 405 (N.D.Cal.1970). As applied, therefore, the two tests have been found to be not only reconcilable, *see Toms v. Country Quality Meats, Inc.*, 610 F.2d 313, 315 n. 6 (5th Cir.1980), but complementary, *J.A. Olson Co. v. City of Winona*, 818 F.2d 401, 410 (5th Cir.1987).

The court finds the place of activities test to be the appropriate one for determining the principal place of business of Standard Fruit Company ("Standard Fruit"). Its operations occur in Ecuador, Honduras, and Costa Rica, and its executive and administrative functions occur in California and Florida. For purposes of determining diversity of citizenship, all aliens, whatever their nationality, are deemed to be citizens of the same jurisdiction. *K & H Business Consultants, Ltd. v. Cheltonian, Ltd.*, 567 F.Supp. 420 (D.N.J.1983). In the court's view, this rule is equally applicable to determining a corporation's principal place of business. This determination underlies that of corporate citizenship for purposes of diversity jurisdiction, and, in cases not presenting a federal question, removal jurisdiction. Thus, the fact that all of Standard Fruit's operations occur in alien jurisdictions is the controlling characteristic, and, for purposes of the place of activities test, the court concludes that Standard Fruit's operations occur in one jurisdiction. Although certain of its executive and administrative functions occur in two states in the United States, this fact does not support a conclusion that Standard Fruit's activities, including operations and management, are *scattered* throughout several jurisdictions within the meaning of the nerve center test. Rather, its activities are distinctly, though not equally, divided among three different jurisdictions, with with its operations occurring solely in one of them.

Application of the place of activities test leads the court to the conclusion that Standard Fruit's principal place of business is Latin America, not Florida, and that therefore its presence in the litigation does not contravene that no local citizen limitation in the removal statute. Standard Fruit is in the business of growing and exporting bananas in Costa Rica, Honduras, and Ecuador. All of its employees are in those three countries. Affidavit of Patrick Nielson at 16. Its day to day operational and management decisions are made at these places of operation. *Id.* at 35, 48–49. None of its operational activities take place in the United States.

The court need not reach the issue of whether Standard Fruit is actually a citizen of any of the Latin American countries in which its operations are centered, nor must it address the possibility of corporate dual citizenship. *See Willems v. Barclays Bank, D.C.O.*, 263 F.Supp. 774 (S.D.N.Y. 1966). The removal issue as it pertains to Standard Fruit can be resolved on the basis of the court's finding that Standard Fruit's principal place of business is not Florida. *Accord Steinbock-Sinclair v. Amoco Int'l. Oil Co.*, 401 F.Supp. 19 (N.D.Ill.1975).

The court further finds that Standard Fruit & Steamship Company's ("Standard Steamship") principal place of business is California by applying the nerve center test. The nerve center test is most appropriate in regard to Standard Steamship because its activities are scattered over six states. Its executive, administrative, and managerial activities take place in California, Mississippi, and Florida, and its operations occur in Delaware, New York, California, Mississippi, and Texas. On the record presented, Standard Steamship is neither an alien nor a Florida citizen such that removal would have been improper due to its presence in this litigation.

Standard Steamship has no employees in Florida, nor does it own assets or make sales in Florida. Its ties to Florida appear to be through the Dole Fresh Fruit Company. (It is not disputed that Dole's principal place of business is Florida.) Two of Standard Steamship's vice-presidents reside in Boca Raton and are also officers of Dole Fresh Fruit Company. It apparently has a logistics department in Boca Raton, which plaintiffs assert is responsible for the coordination of banana shipments. However,

the record is lacking in any details as to what the logistics department actually does, and plaintiffs' conclusion is contradicted by evidence that the shipments are supervised from the terminals in Mississippi and four other states. In addition, this department is not staffed by employees of Standard Steamship, but rather its administration is procured from Dole employees.

Standard Steamship's operations and employees are located outside of Florida. It receives fruit from Latin America at five terminals, located in Delaware, New York, California, Mississippi, and Texas. The terminal operations are overseen by a Standard Steamship employee at the Mississippi terminal.

Standard Steamship's directors reside in California. The Board of Directors meets there. Its president and two vice-presidents live there. Its corporate headquarters are in Los Angeles, where corporate books and records are prepared and maintained, tax returns are generated and filed, and corporate policy is determined. Affidavit of Patrick Nielson at par. 13.

On this record, the court finds that the locus of managerial and policymaking functions of Standard Steamship, that is, its nerve center, would be California. Its president, many of its officers, and directors reside there, one of its terminals is there, and, although its operations and managerial activities are scattered among five other states, its executive and policymaking activities appear to be centered at its corporate headquarters in California. Its activities in Florida, as in the other three states involved, are minimal compared to its activities in California. Thus, Standard Steamship is neither an alien nor a Florida citizen such that removal would be improper due to its presence.

## II. *Fraudulent Joinder of Dole Fresh Fruit Company*

It is not disputed that Dole Fresh Fruit Company ("Dole") is a citizen of Florida. However, defendants contend that Dole is fraudulently joined, and that, therefore, it must be ignored for purposes of determining removability. *Morris v. E.I. DuPont*

*de Nemours & Co.*, 68 F.2d 788 (8th Cir. 1934); *Parks v. New York Times Co.*, 308 F.2d 474 (5th Cir.1962).

The test for fraudulent joinder requires the removing party to show that there is no possibility that the plaintiff would be able to establish a cause of action against the resident defendant in state court. *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir.1983). That is, there must be no reasonable basis in fact or colorable ground supporting the claim against the joined defendant. *Goldberg v. CPC Int'l, Inc.*, 495 F.Supp. 233 (N.D.Cal.1980). This determination must be based upon the plaintiff's pleading at the time of the petition for removal. *Pullman Co. v. Jenkins*, 305 U.S. 534, 537, 59 S.Ct. 347, 348, 83 L.Ed. 334 (1939); *Coker*, 709 F.2d at 1440.

By applying these principles, the court finds that Dole has been fraudulently joined. Plaintiffs argue that Dole is a proper defendant in that it is the alter ego of, or has assumed liability for, Standard Fruit. However, plaintiffs' pleading at the time of the petition for removal is wholly lacking in legal and factual allegations to the effect that Dole is the alter ego of, or has assumed the liabilities of Standard Fruit. These allegations must be made to establish a cause of action. *See e.g., Gross v. Cohen*, 58 So.2d 703 (Fla.1952); *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So.2d 1114 (Fla.1984). In regard to Dole, plaintiffs have merely alleged that Dole, along with other defendants, was negligent in causing, and strictly liable for, their injuries.

Plaintiffs argue that they need only establish a mere possibility. However, they must establish at least a colorable ground for these claims, and the record does not provide one. Dole was not in existence at the time plaintiffs' sustained their injuries. Furthermore, although Standard Fruit procures administrative services from Dole, the mere procurement of these services does not support a colorable claim that the two constitute a single operation. *Comp. Dania Jai-Alai*, 450 So.2d at 1121.

Based upon the foregoing analysis, it appears that removal was proper in this

case. The presence of Standard Fruit and Standard Steamship do not contravene the no local citizen limitation, and Dole, though a citizen of Florida, was not properly joined in this litigation.

■ 2. Defendants' Motion to Dismiss for *Forum Non Conveniens* is GRANTED.

Defendants describe this cause as representing "one of the most wideranging efforts at forum shopping in legal history." Brief in Support of Motion to Dismiss at 1. They point out that fifty-eight of the plaintiffs herein filed suit in the Circuit Court for Dade County, Florida, in 1983. That case was subsequently removed to the Southern District of Florida, which dismissed it on the basis of *forum non conveniens. Sibaja v. Dow Chemical Co.*, No. 83–1347–Civ–JLK. The Eleventh Circuit affirmed the order of dismissal. *Sibaja v. Dow Chemical Co.*, 757 F.2d 1215 (11th Cir.), *cert. denied*, 474 U.S. 948, 106 S.Ct. 347, 88 L.Ed.2d 294 (1985).

Defendants further note that plaintiffs from Rodrigo Esquival Aquilar to Victor Julio Rodriguez Vasquez brought suit in Superior Court for Los Angeles County, California in 1985. That case was subsequently removed to the Central District of California, which dismissed it on the basis of *forum non conveniens* in 1986. *Aquilar v. Dow Chemical Co.*, No. 86–4753 JGD (Tx.). That case is currently on appeal to the Ninth Circuit.

Further still, defendants note that plaintiffs from Domingo Castro Alfaro to Manuel Flores Valverde filed suit in Harris County, Texas in 1984. That case was subsequently removed to federal court, and then remanded to state court. Motions to Dismiss on the basis of *forum non conveniens* are currently pending before the state court.

Defendants acknowledge that the remaining plaintiffs have not previously filed suit in the United States. They argue, however, that the three earlier cases and the one before this court have common threads, including that fact that all plaintiffs are residents of Costa Rica, all allege, or it has been established that, they worked on Standard Fruit banana plantations, and all or almost all of them have pursued or are pursuing workers compensation claims in Costa Rica.

Against this background, defendants argue four bases for dismissal. First, they argue that this court must take judicial notice of the district court's ruling in *Sibaja*, and particularly of the facts established therein. Second, they argue that the *Sibaja* decision constitutes *res judicata* as to the claims filed in this cause by plaintiffs who filed claims in *Sibaja*. Third, they argue that the plaintiffs in *Alfaro* and in the case before this court are collaterally estopped from bringing this action, in that the court must follow the same analysis applied in *Sibaja*. Finally, they argue that the present action must be dismissed under the doctrine of *forum non conveniens*.

Plaintiffs stand on their Motion to Remand, and do not argue any specific grounds in opposition to this motion.

First, the court takes judicial notice of the *Sibaja* decision pursuant to Rule 201(d) of the Federal Rules of Evidence. In a well-reasoned order, the district court dismissed the cause on the ground of *forum non conveniens*. The court found that the controlling law was set forth in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) and *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). In applying the factors set forth in *Piper Aircraft* and *Gilbert*, the Court held that the considerations overwhelmingly weighed in favor of dismissal. The court held that the private interests to be considered under *Gilbert* were hampered by the fact that the alleged injuries occurred in Costa Rica.

All the plaintiffs are Costa Rican. Most of the evidence and witnesses are in Costa Rica and none are in Florida, and compulsory process would not be available to compel production of this evidence or the attendance of these witnesses. The cost of obtaining the evidence from Costa Rica would be substantial, if possible. The Defendants would not be able to implead potential third party de-

fendants located in Costa Rica in this action in Florida. And, as was the case in *Piper Aircraft*, the Plaintiffs have not offered any specific reasons showing the convenience of their choice.

Order of Dismissal at 4–5.

The court further reasoned that the public interest was not served by the choice of forum.

It could not help but congest this Court's docket more than it would that of a Court at the situs of the injury simply because of the logistics of dealing with fifty-eight different Plaintiffs at this distance. It would force the Court to conduct a complex exercise in comparative law and consider a foreign law with which the Court is not familiar and which is in a foreign language. The avoidance of such comparisons is one of the objectives of the doctrine of *forum non conveniens. Piper Aircraft*, 102 S.Ct. at 263. It would require jurors to hear and decide a dispute that has no connection with this community. And finally, the Defendants have asserted that Costa Rica offers the Plaintiffs an alternative forum with an adequate remedy, an assertion which has not been rebutted by the Plaintiffs.

Order of Dismissal at 5.

Second, the court finds that the plaintiffs who filed claims in the *Sibaja* and *Aquilar* cases are barred by the doctrine of *res judicata* from bringing their claims in this action. The addition of new plaintiffs to a later complaint does not prevent application of *res judicata* to those plaintiffs who were parties to prior litigation. *See e.g. Sims v. Mack Trucks, Inc.*, 463 F.Supp. 1068 (E.D.Pa.1979). Nor does that fact that the previous judgment was not entered on the merits, but rather on grounds of *forum non conveniens*, preclude application of *res judicata* in this instance. *See Pasteska v. Texaco, Inc.*, 565 F.2d 851 (3d Cir.1977), in which the court held that a district court was bound by an earlier *forum non conveniens* dismissal entered by another district court where identical objective criteria were relied upon by the appellants and identical material facts underlied

the application of those criteria in each case.

Third, the court finds that the plaintiffs in *Alfaro* and in the case before this court are not collaterally estopped from litigating this issue in this court. Collateral estoppel is not generally applicable unless there exists either identity or privity between parties to the previous litigation and those involved in the new litigation. *See e.g., In re Gottheiner*, 703 F.2d 1136 (9th Cir.1983). For privity between the parties to exist, there must be a substantial identity between them or a sufficient commonality of interests. *Id.* at 1139. Privity exists, for example, between a controlling shareholder in a corporation and the corporation, *Sparks Nugget, Inc. v. Commissioner*, 458 F.2d 631 (9th Cir.1972), and between the successor in interest in property and the former owner, *In re Kors, Inc.*, 15 B.R. 444 (Bankr.D.Vt.1981).

The court finds that the plaintiffs named in this lawsuit do not share a sufficient commonality of interests or substantial identity such that litigation affecting the rights of those who were parties in the *Sibaja* action is necessarily conclusive as to the rights of the new parties named in the instant action. Although the individual plaintiffs named in this action sustained their injuries in the same circumstances as those involved in the other actions, their interests derive from their own personal circumstances and injuries. On this basis, the court finds no privity between the parties in this case.

Finally, the court finds that, as to the *Alfaro* plaintiffs and the new plaintiffs named in the instant action, the doctrine of *forum non conveniens* requires dismissal of this action for the same reasons cited by the district court in *Sibaja*. Defendants point out several determinative factors in the Motion to Dismiss.

a. Each individual plaintiff was allegedly exposed to the products complained of in Costa Rica.

b. Each individual plaintiff is a citizen and resident of Costa Rica.

c. The evidence and witnesses pertaining to the vendors and purchasers, employ-

ers, supervisors, physicians, hospital personnel, families, Costa Rican government officials, and documentary evidence are primarily located in Costa Rica.

d. Where such witnesses are available voluntarily, the cost of arranging for appearances in the Southern District of Florida would be substantial, if not prohibitive.

e. Most of the evidence and witnesses are not subject to the compulsory process of this court.

f. The witnesses and evidence available in the United States are primarily in places other than the Southern District of Florida, and so would not be more conveniently obtained in Miami than in Costa Rica or other places in this country.

g. The cause of action will be governed by Costa Rican law, with which Costa Rican courts have far greater familiarity.

h. The public interest is outweighed by the congestion of the court's docket and burdens upon local citizens serving as jurors.

i. The Costa Rican judicial system provides a forum and a remedy to the plaintiffs in the form of compensatory damages.

j. The defendants are subject to, or will submit to the jurisdiction of the Costa Rican judicial system.

k. Claims against other distributors and manufacturers not named in the suit, and third party claims for contribution can only be asserted through process issued and served in Costa Rica.

These factors are identical to those involved in the *Sibaja* case. The court finds that the private interests of the plaintiffs are similarly hampered by the Costa Rica situs in this case, and that the public interest is not served by plaintiffs choice of forum. As to the three new defendants in this action, Standard Fruit, Standard Steamship, and Dole, the court finds that their presence does not render this forum any more convenient than in the previous actions. As noted by defendants, the witnesses and evidence available in the United States are primarily located in places other than the Southern District of Florida. Neither Standard Fruit nor Standard Steamship have their principal places of business in Florida, or a substantial presence in Florida. Dole's relation to the case has not been demonstrated by plaintiffs, and therefore its presence in Florida would not contribute to the convenience of this forum.

For the foregoing reasons, the court finds that the doctrines of *res judicata* and *forum non conveniens* warrant dismissal of this action.

3. Defendants' Motion to Dismiss for Fraudulent Joinder is GRANTED for the reasons set forth in that portion of this Order denying plaintiffs' Motion to Remand.

4. Defendants' Motions to Dismiss for Lack of Service of Process, Lack of Jurisdiction Over the Person, and for More Definite Statement are DENIED as moot in light of that portion of this Order dismissing this cause for *forum non conveniens.*