896 F.Supp. 1197 (1995)
PROYECTOS ORCHIMEX DE COSTA RICA, S.A., a Costa Rica company, Plaintiff,
v.
E.I. DUPONT de NEMOURS & COMPANY, a Delaware corporation, Defendant.
HOPEWELL BLOOMS, LTD., a Jamaica limited company, Plaintiff,
v.
E.I. DUPONT de NEMOURS & COMPANY, a Delaware corporation, Defendant.
FRED M. JONES ESTATES, LTD., a Jamaica limited company, Plaintiff,
v.
E.I. DUPONT de NEMOURS & COMPANY, a Delaware corporation, Defendant.
Noel A. LYON, d/b/a Church Valley Farm, a sole proprietorship, Plaintiff,
v.
E.I. DUPONT de NEMOURS & COMPANY, a Delaware corporation, Defendant.
TYALL FOLIAGE, LTD., a Jamaica limited company, Plaintiff,
v.
E.I. DUPONT de NEMOURS & COMPANY, a Delaware corporation, Defendant.
The ORCHID PATCH, LTD., a Jamaica limited company, Plaintiff,
v.
E.I. DUPONT de NEMOURS & COMPANY, a Delaware corporation, Defendant.
JALTIQUE, LTD., a Jamaica limited company, Plaintiff,
v.
E.I. DUPONT de NEMOURS & COMPANY, a Delaware corporation, Defendant. *1198 [DO] Nos. 95-194-CIV-ORL-18, 95-186-CIV-ORL-18, 95-191-CIV-ORL-18, 95-181-CIV-ORL-18, 95-286-CIV-ORL-18, 95-190-CIV-ORL-18 and 95-196-CIV-ORL-18.
United States District Court, M.D. Florida, Orlando Division.
August 23, 1995.
*1199 Dennis K. Bayer, Cobb, Cole & Bell, Daytona Beach, FL, for plaintiff.
John Armando Boudet, Dawn I. Giebler, Cabaniss & Burke, P.A., Orlando, FL, for defendant.

ORDER
G. KENDALL SHARP, District Judge.
The defendant, E.I. du Pont de Nemours and Company ("DU PONT"), seeks to dismiss these seven cases on the grounds of forum non conveniens. The cases all involve product liability claims against DU PONT for damage to commercial nursery crops and real property located in foreign countries allegedly arising from the plaintiffs' application of an agricultural fungicide manufactured by DU PONT known as Benlate®. None of the plaintiffs are citizens or residents of the United States. DU PONT is a Delaware corporation with its principal place of business in Wilmington, Delaware.

I. DESCRIPTION OF CASES
Six of these cases, Lyon (CIV # XX-XXX-XX), Hopewell Blooms, Ltd. (CIV # XX-XXX-XX), The Orchid Patch, Ltd., (CIV # XX-XXX-XX), Fred M. Jones Estates (CIV # XX-XXX-XX), Jaltique, Ltd. (CIV # XX-XXX-XX) and Tyall Foliage, Ltd. (CIV # XX-XXX-XX), involve claims by commercial nurseries located in Jamaica, West Indies. One case, Proyectos Orchimex de Costa Rica, S.A. (CIV # XX-XXX-XX) involves a commercial nursery located in Costa Rica.
The complaints in all of the cases are essentially identical. The plaintiffs each allege that they are citizens of either Jamaica or Costa Rica and that DU PONT is a Delaware *1200 corporation with its principal place of business located in Wilmington, Delaware. Subject matter jurisdiction is asserted based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(2).[1] Plaintiffs allege that they applied Benlate® to their nurseries in Jamaica and Costa Rica for a number of years and that the Benlate® damaged or destroyed the crops to which it was applied and contaminated the plaintiffs' nursery soils and growing facilities. According to the complaints, the Benlate® used by the plaintiffs was, "prior to the time it was sold by DU PONT," either contaminated with a herbicide or erroneously designed, formulated or manufactured so that it produced a herbicidal effect after application. Each plaintiff asserts causes of action for negligence, strict liability and breach of warranty. Plaintiffs seek recovery for loss of inventory, past and future lost profits, costs of decontamination of soil and growing facilities and other losses resulting from the alleged contamination of the real property by Benlate®.

II. GOVERNING LAW
In federal diversity cases, forum non conveniens is governed by federal law, not state law. Sibaja v. Dow Chemical Co., 757 F.2d 1215, 1219 (11th Cir.), cert. denied, 474 U.S. 948, 106 S.Ct. 347, 88 L.Ed.2d 294 (1985). The basic principles governing the application of the doctrine in the federal courts were set forth by the Supreme Court in Piper Aircraft v. Reyno, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), reh'g denied, 455 U.S. 928, 102 S.Ct. 1296, 71 L.Ed.2d 474 and Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Forum non conveniens is available as a ground for dismissal in diversity cases "even when jurisdiction is authorized by the letter of a general venue statute." Gulf Oil, 330 U.S. at 507, 67 S.Ct. at 842.
Under federal forum non conveniens law, a foreign plaintiff's choice of forum is not entitled to the same deference or presumption of correctness as would be applied where a plaintiff sues in its home forum. Piper, 454 U.S. at 256, 102 S.Ct. at 266. This principle stems not from any antipathy toward foreign nationals, but rather from the fact that the presumption that plaintiffs have selected the most convenient forum is much less reasonable when the chosen forum is not the plaintiffs' home forum. Id., In re Silicone Gel Breast Implants Products Liability Litigation, 887 F.Supp. 1469 (N.D.Al. 1995).
In considering a motion for dismissal based on forum non conveniens, the trial court should evaluate and weigh all relevant public and private interest factors that bear upon the relative convenience of the forums. Piper, supra, 454 U.S. at 254, 102 S.Ct. at 265. The evaluation of these factors is committed to the sound discretion of the trial court. Gulf Oil, supra, 330 U.S. at 508, 67 S.Ct. at 843. There is no rigid formula to be applied in considering dismissal based on forum non conveniens and the doctrine gives "substantial deference" to the trial court's determination of the competing interests. Piper, 454 U.S. at 257, 102 S.Ct. at 266-67. As the court stated in Piper,
[E]ach case turns on its facts. If central emphasis were placed on any one factor, the forum non conveniens doctrine would lose much of the flexibility that makes it so valuable.
Id. at 249-250, 102 S.Ct. at 263.
In weighing these factors, the court may consider any concessions made by the moving defendant such as waiving statutes of limitations, objections to process, personal jurisdiction or other similar concessions. Piper at 257 n. 25, 102 S.Ct. at 267 n. 25, In re Union Carbide Corporation Gas Plant Disaster at Bhopal India in December 1984, 634 F.Supp. 842, 850 (S.D.N.Y.1986). In the instant cases, DU PONT has agreed, that (1) it will submit to the jurisdiction of the foreign tribunals, (2) it will be bound to pay final judgments rendered against it by those *1201 tribunals, (3) it will exclude from calculation of statutes of limitations the periods that these actions were pending in this court, (4) it will make relevant documents available to plaintiffs by providing access to DU PONT's Benlate® document depository located in Wilmington, Delaware to plaintiffs' legal representatives in the same manner as access is provided to legal representatives of domestic litigants.

III. DISCUSSION

A. Preliminary Considerations

1. Amenability to Process
"At the outset of any forum non conveniens inquiry, the court must determine whether there exists an alternative forum." Piper, 454 U.S. at 254, n. 22, 102 S.Ct. at 265, n. 22. The requirement of an alternative forum will ordinarily be satisfied when the defendant is "amenable to process" in the other jurisdiction. Id. Here, DU PONT has agreed to submit to the jurisdiction of the foreign tribunals and thus is clearly "amenable to process" in the alternative forum.

2. Choice of Law
In general, a court engaged in an inquiry concerning the existence and adequacy of an alternative forum should not hinge its decision based on the possibility of an unfavorable change of law. "[I]f conclusive or substantial weight were given to the possibility of a change in law, the forum non conveniens doctrine would become virtually useless." Piper 454 U.S. at 250, 102 S.Ct. at 263. However, a narrow exception to this rule applies in situations where "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." Id. at 254, 102 S.Ct. at 265.
The evidence in the record establishes the following: (1) Jamaica is a common law jurisdiction with a developed and independent court system, (2) Jamaican law provides a remedy to persons whose real and/or personal property is damaged by a defective product, (3) Jamaican law recognizes claims for negligence and breach of warranty, and (4) Jamaican law allows for the recovery of compensatory damages. Plaintiffs have submitted an affidavit from a Jamaican lawyer, Mr. Roald Nigel Adrian Henriques, opining that the Jamaican courts may decline to accept jurisdiction of these cases in the event that they are filed in Jamaica. However, it appears that Mr. Henriques' analysis proceeds on the assumption that DU PONT would attempt to resist jurisdiction. As noted above, DU PONT has agreed to submit to jurisdiction in Jamaica. In any event, the court finds that the analyses and opinions presented by DU PONT's expert witness, Mr. George C.J. Moore, are more persuasive.
With respect to Costa Rica, DU PONT has provided the court with the affidavits of Mr. Victor Manuel Garita and Mr. Carlos J. Oreamuno. Messrs. Garita and Oreamuno are lawyers in Costa Rica and members of the largest law firm in that country. The affidavits establish that: (1) Costa Rica is a civil law jurisdiction with a reliable and impartial court system, (2) the Civil Code of Costa Rica recognizes causes of action for negligence and breach of warranty, and (3) under Costa Rican law, a prevailing plaintiff is entitled to recover full compensatory damages, including lost profits and cost of replacement or repair of damaged property.
In response, Plaintiffs have submitted an affidavit from Mr. Federico Sosto Lopez, an attorney in Costa Rica. Mr. Lopez's affidavit generally confirms the status of the law as described by Garita and Oreamuno, but raises questions about the enforceability of a potential judgement against DU PONT and expresses concerns that pre-trial discovery is not as extensive in Costa Rica as in the United States. The concerns about enforceability of a judgment are misplaced because DU PONT has agreed in this court to pay any final judgment entered in Costa Rica. The concerns about the scope of pre-trial discovery are also unavailing because it is not necessary that the alternative forum have extensive pre-trial discovery procedures comparable to those found in the United States.
Jamaica and Costa Rica have previously been found to be adequate forums by other federal courts. See, Early v. Travel Leisure Concepts, Inc., 674 F.Supp. 1199 (E.D.Va. *1202 1987) (Jamaica) and Cabalceta v. Standard Fruit Co., 667 F.Supp. 833 (S.D.Fla.1987) (Cost Rica). Based on the record and the applicable law, the court finds that the proposed alternative forums of Jamaica and Costa Rica would be available to the plaintiffs and would provide plaintiffs with an adequate remedy.

B. Private Interest Factors

The Gulf Oil decision listed a number of factors that affect the interests of the specific litigants to an action and which should be considered in a forum non conveniens analysis. These private interest factors include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; possibility of view of premises, if view would be appropriate and all other factors that make trial of a case easy, expeditious and inexpensive." Id. 330 U.S. at 508, 67 S.Ct. at 843.

1. Location of Physical Evidence
The central piece of physical evidence in these cases is the real property which has allegedly been damaged and contaminated by the application of the defendant's product. It is reasonable to expect that these cases will involve extensive sampling, testing and analysis of the plaintiffs' real property located in Jamaica and Costa Rica. The costs associated with transporting counsel, experts and other interested persons to these foreign locations would be enormous. In addition, the court finds it significant that there would be no realistic possibility of providing for a view of the premises by the finder of fact if the cases are tried in this forum. This is a particularly relevant consideration in cases such as these which involve allegations of ongoing damage to real property. The court finds that the location of the physical evidence supports dismissal.

2. Location of Witnesses
With respect to the location of witnesses, it appears that there are relevant witnesses in the United States as well as in the foreign jurisdictions. However, it is undisputed that the vast majority of material witnesses are located outside of this forum. Virtually none of the witnesses with direct knowledge of the events connected with these cases are located here. None of the events connected with this case took place in the Middle District of Florida. The product was not designed, manufactured, sold to or used by these plaintiffs in the Middle District of Florida. Although the plaintiffs allege that some of the Benlate® involved in these cases may have been shipped to Jamaica and Costa Rica through the Port of Miami, the court finds this limited contact with the State of Florida to be insignificant, particularly since the plaintiffs' complaints expressly allege that the product was not substantially altered or changed after leaving DU PONT and before reaching the plaintiffs.
The plaintiffs, the plaintiffs' present and former employees, plaintiff's accountants and bookkeepers, neighboring landowners and growers, and other potential witnesses with direct knowledge about this case are located in the foreign forums. The DU PONT witnesses with knowledge about this case are largely located in Delaware. The plaintiffs have offered to make themselves and certain of their current employees available to give testimony in this forum. However, the court finds that, on balance, the plaintiffs' cooperation in this regard is not sufficient to offset the overall inconvenience of trying these cases in a forum which is not home to any of the principal witnesses, parties or events connected with this lawsuit. See, In re Silicone Gel Breast Implants, supra, 887 F.Supp. at 1477 (plaintiff's offer to bring witnesses to forum found insufficient to offset burden).

3. Access to Documentary Evidence
With respect to documents, it appears that most, if not all, of the relevant documents are maintained outside of this forum. DU PONT's Benlate®-related documents are housed in a document depository located in Wilmington, Delaware. The plaintiffs' business records are maintained in their respective home forums. It is reasonable to anticipate that there are relevant documents in the hands of third parties in the United States as well as in the foreign forums. In the event of dismissal to the foreign forums, the plaintiffs would nevertheless be able to obtain *1203 documents from third parties located in the United States under 28 U.S.C. § 1782 as well as through other extra-territorial means such as the Hague Convention. The foreign forums have no provision comparable to 28 U.S.C. § 1782 allowing for the direct production from third parties. In addition, as a condition of dismissal, DU PONT has agreed to permit plaintiffs' legal representatives access to the Benlate® document depository in the same manner as is provided to domestic litigants.
Another factor to be considered is that there has been substantial discovery taken of DU PONT by other plaintiffs in Benlate® cases including numerous depositions of key DU PONT officials by Plaintiffs' present counsel. It appears to the court that a substantial portion of what remains to be done in these cases is the discovery of evidence from the plaintiffs themselves and from those with direct knowledge as to the plaintiffs nursery operations. Considering all of these factors, the court finds that the plaintiffs' would have relatively greater ease in obtaining the relevant documents in the event of dismissal than would DU PONT in the event that the cases remain in this forum. Thus, on balance, the court finds that the question of relative ease of access to documents supports dismissal.

4. Other Private Interest Factors
The court has considered other private interest factors raised by the plaintiffs including the contention that the presence of plaintiffs' counsel in this forum is a compelling reason for maintaining the cases in the Middle District of Florida. The court does not find this a compelling factor. Even if the location of counsel is a relevant consideration, the record here shows that both Jamaica and Costa Rica (unlike many foreign jurisdictions) permit the use of contingent fees and there is no reason to believe that the plaintiffs will find it impossible to locate competent counsel in their home forums. The affidavits of Garita, Oreamuno and Moore establish that competent local counsel would be available to represent the plaintiffs in the foreign forums.

C. Public Interest Factors

This court's analysis of the private interest factors enumerated above supports dismissal based on forum non conveniens and thus a weighing of the public interest factors is not strictly necessary. Nevertheless, a review of the public considerations leaves no doubt that dismissal of these cases is appropriate.
By all accounts, these are complex and highly contested cases often featuring lengthy trials. Some previous Benlate® trials have lasted as long as six months. The trial of these seven cases alone could occupy one of the three federal judges in the Orlando Division of the Middle District of Florida full time for a year or more. The burden, delays and inconvenience to the other civil and criminal litigants in this forum would be enormous. This court's docket would be thrown into chaos.
The litigation of these costly cases in this court would also impose a tremendous burden on the citizens of the Middle District of Florida. Scores of citizens from this community would be inconvenienced by being called to serve as jurors in cases involving parties and events having no connection to this forum. The burden of imposing jury duty on citizens to decide a case with no connection to the forum is a significant factor in performing a forum non conveniens analysis. Piper, 454 U.S. 235, 241 n. 6, 102 S.Ct. at 255, 258 n. 6, citing Gulf Oil, 330 U.S. at 509, 67 S.Ct. at 843. In these cases, the jury duty burden weighs heavily in favor of dismissal.
Another relevant consideration is the relative interest of the competing forums in the litigation. Jamaica and Costa Rica clearly have a strong interest in determining whether a pesticide used by its citizens has caused damage. Plaintiffs contend that Florida has an interest in this litigation because Benlate® was sold in Florida and because Florida state officials are conducting research regarding Benlate®. However, this court reaches the same conclusion as was reached by the Supreme Court when a similar argument was advanced by the plaintiffs in the Piper case: "[t]he incremental deterrence that would be gained if this trial were held in an American court is likely to be insignificant." *1204 Plaintiffs' counsel has acknowledged that he currently represents approximately 50 local growers in Benlate® suits in the Florida state courts. Under these circumstances, the court concludes that there would be little or no "incremental deterrence" to be gained by litigating these foreign cases in this forum.
A final factor to be considered is the possibility that this court will have to apply foreign law in these cases. DU PONT contends that foreign law is controlling. The plaintiffs contend that "American" law is controlling, although the plaintiffs have not identified any particular "American" jurisdiction whose law would be applicable. In any event, while there is some question as to whether foreign law would ultimately apply to all aspects of these cases, there is no question that these cases would ensnare this court in a difficult choice of law determination. These difficulties would be compounded in the Costa Rican case by the need to translate relevant documents and law. Without deciding the choice of law issue, the court finds that the possibility that foreign law will apply weighs strongly in favor of dismissal.

IV. CONCLUSION
In light of the availability of an adequate alternative forum, and based upon a balancing of the private and public interest factors enumerated above, the court finds that dismissal of these cases warranted. This dismissal is conditioned on the following:
1. DU PONT's agreement to accept service of process in Jamaica and Costa Rica;
2. DU PONT's agreement to exclude the time period during which these cases were pending in this court from any statute of limitations analysis;
3. DU PONT's agreement to be bound by any final judgment, after appeals if applicable, that may be entered against it by the courts in Jamaica and Costa Rica;
4. DU PONT's agreement to provide the plaintiffs with access to DU PONT's document depository and depositions of all DU PONT employees from prior Benlate® related litigation in the same manner as these materials are provided to domestic litigants.
Based on the foregoing and subject to the conditions set forth above, Defendant's Motion to Dismiss Based Upon the Doctrine of Forum Non Conveniens is GRANTED.
DONE AND ORDERED.
NOTES
[1] The sole reference in the complaints in this forum is the allegation that DU PONT "maintained authorized representatives within the territorial jurisdiction of the Middle District of Florida" who worked in the marketing and sale of Benlate®, but there is no allegation that these representatives were involved in any way with the sales at issue here or otherwise interacted with these plaintiffs with respect to their purchases of Benlate®.