**BANCO LATINO, et al., Plaintiffs,**

v.

**Gustavo GOMEZ LOPEZ,
et. al., Defendants.**

**No. 95–1300–CIV.**

United States District Court,
S.D. Florida.

June 20, 1998.

1328

verhouse, Jr., Miami, FL, for Maria Teresa Pulgar.

Clifford Reynold Steele, Steele & Hanson, P.A., Miami, FL, for Fernando Lauria.

Joseph A. DeMaria, Tew Cardenas Rebak Kellogg, Lehman DeMaria & Tagul, Miami, FL, for Eloy Montenegro.

Steven Elliot Chaykin, Hanzman, Criden, Korge, Hertzberg & Chaykin, Miami, FL, for Alejandro Rivera.

Donald I. Bierman, Bierman Shohat Loewy & Klein, Miami, FL, for Giacomo Leon.

Jane Wollner Moscowitz, Miami, FL, for Hans Abate.

Richard Caldwell Smith, Coll Davidson Carter Smith, Salter & Barkett, Miami, FL, for Socimer Intern. Bank Ltd., A Bahamian Corp., Socimer Finance Holding, S.A., A Swiss Corp.

Luis Konski, Konski Lehr & Ferro, Miami, FL, for Antonio Ugueto.

Carlos A. Lacasa, Miami, FL, Juan J. Rodriguez, Katz, Barron, Squitero & Faust, Miami, FL, for Ignacio Andrade Arcaya.

Steven Herbert Hibbe, Coral Gables, FL, for Mario Palenzona.

Jonathan Goodman, Akerman Senterfitt & Eidson, Miami, FL, Dwight D. Meier, David B. Tatge, Ginsburg Feldman & Bress, Washington, DC, for Banco Latino, S.A.C.A., a Venezuelan Corp., Banco Latino Intern., a U.S. Corp., Fondo de Guarantia de Depositos Y Proteccion Bancaria, A Semi–Autonomous Venezuelan Government Agency, Consorcio Inversionista Latino, C.A., A Venezuelan Corp., Banco Maracaibo, S.A.C.A., A Venezuelan Corp.

Elliot H. Scherker, Roberto Martinez, Greenberg Traurig Hoffman, Lipoff Rosen & Quentel, Miami, FL, for Gustavo A. Gomez Lopez.

Brian Stephen Keif, Brian Keif, Law Offices, Key Biscayne, FL, Hugh Franklin Cul-

## ORDER SEVERING PARTIES AND CONDITIONALLY DISMISSING CLAIMS

FERGUSON, District Judge.

**THIS CAUSE** is before the Court upon various Motions to Dismiss on Forum Non Conveniens grounds filed and adopted by several defendants.

### Factual Background

This action arises from the collapse of the Venezuelan banking industry and the decision by Venezuelan banking authorities to intervene and assume control over Banco Latino, S.A.C.A. ("BLCA"), the country's then second largest banking institution.

There are five plaintiffs in the cause: (1) BLCA; (2) Banco Maracaibo, S.A.C.A. ("Maracaibo"), a Venezuelan bank; (3) Consorcio Inversionista Latino, C.A., ("Consorcio"), a Venezuelan investment company; (4) Fondo De Guarantia De Depositos Y Proteccion Banacaria ("FOGADE"), the Venezuelan government's deposit insurance agency; and (5) Banco Latino International ("BLI"), an Edge Act corporation located in Miami and wholly owned subsidiary of BLCA (collectively, the "Plaintiffs").[1] Defendants include ten corporations, one partnership, twenty-two named individuals and one hundred unnamed "John Doe" defendants.[2]

The complaint alleges that collectively the defendants conspired to perpetrate a massive fraud on the plaintiff financial institutions through five separate and distinct illegal banking operations. Specifically, plaintiffs maintain that certain insider defendants caused BLCA and BLI to enter into and guarantee a series of unlawful loans to other banks and financial institutions called "triangular" or "back to back" placements.[3] Plaintiffs assert that the triangular nature of the placements at issue were not acknowledged and properly accounted for by insiders at BLCA and BLI. These omissions were allegedly calculated by the insider defendants to create the illusion that the plaintiff financial

institutions were fully capitalized and financially viable. Plaintiffs maintain that the financial institutions were in fact undercapitalized and financially exposed as a result of numerous acts of fraud and concealment to wit: improper loans made to favored borrowers, the manipulation of records in attempts to hide improper transactions and illegal laundering of funds through domestic and foreign accounts.

In early 1994, the Federal Reserve expressed concerns about credit risks involving BLI's foreign parent and instructed the bank to limit loan participation with its affiliates. Consequently, the insider defendants began reversing several of the triangular placements utilizing BLCA's cash resources, in an attempt to recoup funds to repay improper loans. Plaintiffs allege that these acts resulted in a severe capital shortage at BLCA. In an effort to recover, BLCA tapped the assets of its Miami subsidiary. Nevertheless, mid January, 1994, authorities intervened and closed the bank.

BLCA's collapse triggered a "run" on BLI by depositors. Unable to satisfy the demand for hard currency, BLI ultimately filed for bankruptcy. Plaintiffs maintain that the defendants' illegal operations led directly to the failure of BLCA resulting in over $2 billion in

1. BLCA also has substantial ownership interest in Maracaibo and Consorcio.

2. The defendants are a diverse group of persons and entities who collectively consist of "insiders" who held positions of authority at the plaintiff institutions; friends, family and business associates of the insiders with whom "operations" were conducted; financial institutions who facilitated operations; and persons and companies that laundered and received the proceeds of the alleged fraud.

3. BLI alleges that in one operation, four of the insider defendants, with the knowledge and consent of BLI's board of directors, caused the Miami subsidiary to enter into numerous fraudulent loan placements over a period of several years. These acts are alleged to have made approximately $65 million available to BLCA through Banco Latino, N.V. ("BLNV"), BLCA's offshore bank in Curacao.

A legitimate placement is a loan that would have been recorded as an asset on the books of

BLI. The defendants allegedly caused BLI to make placements, not as investments for the bank, but for their own personal benefit, in violation of United States banking laws and regulations.

According to the plaintiffs, the "triangular or back to back" placements were loans made to "independent" financial institutions on the condition that the institutions receiving the loans make a corresponding loan in the same or similar amount, at a slightly higher interest rate, to BLNV. BLNV then made the funds available to the insider defendants by advancing them to BLCA. To insure that the intermediary financial institutions faced no real economic risk, the plaintiffs contend that BLI "guaranteed" the intermediaries' placements to BLNV through a series of "comfort" letters. By these letters, BLI promised, illegally, that it would not demand repayment of its placements if BLNV failed to repay the corresponding loans made to BLNV by the intermediaries.

losses. Plaintiffs also claim that the defendants' actions contributed significantly to the failure of other banks and financial entities including Maracaibo and Consorcio.

To mitigate hardships, FOGADE intervened and provided assistance using public funds. In exchange for doing so, FOGADE received an assignment of claims against the defendants from BLCA, Maracaibo and Consorcio. In February and March of 1994, Venezuelan authorities issued arrest warrants for seventeen of the twenty-two named individual defendants for the crime of taking fraudulent advantage of public funds.[4] On June 19, 1995, plaintiffs filed suit in this Court to recover damages for violations of the Racketeer Influenced & Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, the Florida RICO statute, 772.018 *et seq.*, applicable provisions of Venezuelan law, common law and other statutory provisions.

### Standard for Motion to Dismiss

It is well settled that a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle [him] to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When considering a motion to dismiss, the court is required to review the complaint in the light most favorable to the plaintiff and accept all allegations as true. *Jackson v. Okaloosa County, Fla.,* 21 F.3d 1531, 1534 (11th Cir.1994).

### The Doctrine of Forum Non Conveniens

■ Under the doctrine of forum non conveniens, a district court has inherent power to decline to exercise jurisdiction over a case when an adequate alternative forum is available. *C.A. La Seguridad v. Transytur Line,* 707 F.2d 1304 (11th Cir.1983). The court must consider all relevant factors of private interest, weighing in the balance a strong presumption against disturbing the plaintiff's initial forum choice. *La Seguridad,* 707 F.2d at 1307. If the court finds the balance of private interests at or near equi-

poise, it must be determined whether factors of public interest tip the balance in favor of trial in the foreign forum. *Id.* If the balance favors the foreign forum, the court must ensure that suit can be reinstated in the alternative forum without undue inconvenience or prejudice. *Id.* Since the touchstone of forum non conveniens analysis is convenience, controlling weight cannot be given to any one factor in the balancing process or the doctrine would lose much of the flexibility that is its essence. *Id. Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 249, 102 S.Ct. 252, 262, 70 L.Ed.2d 419 (1981). The court exercises its sound discretion in determining whether to dismiss a case for forum non conveniens. *Piper Aircraft,* 454 U.S. at 240, 102 S.Ct. at 258.

### A. Adequate Alternative Forum

■ At the outset of any forum non conveniens inquiry, the court must determine whether there exists an alternative forum. The defendants maintain that Venezuela is not merely an adequate alternative forum, it is clearly the superior forum. To rebut this strong assertion, the plaintiffs contend that Venezuela is an inadequate forum because the Venezuelan judicial system is "rife with corruption and delays" and "lack of discovery and other pretrial procedures, as well as procedural failings" will prevent plaintiffs from obtaining adequate relief.

■ As a threshold matter, this Court notes that the burden of establishing whether an alternative forum exists is not a heavy one. *See Carnival Cruise Lines v. Oy Wartsila Ab,* 159 B.R. 984, 990 (S.D.Fla.1993) (holding that the preliminary "suitability" question is not a high hurdle). Ordinarily, this requirement will be satisfied where the defendant is amenable to process in the other jurisdiction. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 506–07, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947). In the instant case, the defendants have agreed to submit to the jurisdiction of Venezuela, making themselves amena-

---

4. At oral argument counsel for all parties agreed that parallel civil proceedings are ongoing in Venezuela in addition to the aforementioned criminal proceedings.

ble to service of process there. However, in rare circumstances, where the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all, the court may conclude that dismissal would not be in the interests of justice. *Id.*

The acts giving rise to this dispute originated in Venezuela and had a devastating impact on the country's economic and political climate. Allegations in the complaint implicate the Venezuelan government, Venezuelan banks and companies, and the citizens of Venezuela as victims and perpetrators. Defendants assert that the Venezuelan government, through plaintiff FOGADE, should not be heard to complain that widespread corruption and other defects in its own judicial system renders Venezuela an inadequate forum. The Court agrees.

"It is not the business of our courts to assume responsibility for supervising the integrity of the judicial system of another sovereign nation." *Blanco v. Banco Indus. de Venezuela, S.A.,* 997 F.2d 974, 982 (2nd Cir.1993). The fact that Venezuelan law is less favorable to the plaintiffs' chance of recovery is not conclusive. *Piper Aircraft,* 454 U.S. at 247, 102 S.Ct. at 261. The concerns about the scope of pretrial discovery are also unavailing because it is not necessary that the alternative forum have comparable procedural safeguards. *Proyectos Orchimex de Costa Rica, S.A. v. E.I. duPont de Nemours & Co.,* 896 F.Supp. 1197, 1200 (M.D.Fla.1995) (dismissal despite lack of extensive pretrial discovery); *See Carnival Cruise Lines,* 159 B.R. at 991 (dismissal despite unavailability of pretrial discovery, conspiracy, piercing the corporate veil and punitive damages in the alternative forum).[5] Moreover, plaintiffs can not seriously contend that a Venezuelan court does not have the authority to order the production of documents from parties before it.

The Court also rejects plaintiffs contention that Venezuela is an inadequate forum be-

cause the legal system is rampant with delays. Delay is an unfortunate but pervasive aspect of the legal process. *Bhatnagar v. Surrendra Overseas Ltd.,* 52 F.3d 1220, 1227 (3d Cir.1995) (holding that 25 year delay is so excessive as to render alternative forum inadequate, but delays of two or three years are of no significance in the forum non conveniens analysis). "Our own courts suffer from delay, as does any other system that attempts to accord some modicum of process." *Id.* Finally, the existence of parallel civil and criminal proceedings in Venezuela lends further support to the adequacy of the Venezuelan forum. A Venezuelan court will be far more adept at applying the law of its own forum, particularly where it is already entertaining lawsuits involving the same subject matter. *Carnival Cruise Lines,* 159 B.R. at 1002. Based on the foregoing, the Court concludes that Venezuela is an adequate forum.

## B. Private Interests

The Court now turns to a review of the factors pertaining to the private interests of the litigants. Important considerations are as follows: (1) relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; and (3) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 506–07, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947).

### Sources of Proof

To the extent that Venezuelan pretrial procedure renders sources of proof less accessible, as discussed above, this factor is entitled to little weight. Plaintiffs assert that counsel and an investigative team have spent more than a year gathering relevant documentary evidence from Venezuela, the Netherland Antilles, the United States and other countries. Plaintiffs further contend that relevant documents will be made available to all

---

**5.** The Court fully expects the defendants to provide records relevant to the plaintiffs' claims as contemplated by the Federal Rules of Civil Procedure *See generally Carnival Cruise Lines,* 159 B.R. at 991; *Piper Aircraft,* 454 U.S. at 257, 102

S.Ct. at 267 (district courts may dismiss subject to the condition that parties agree to comply with reasonable discovery requests). Through pleadings, plaintiffs have agreed to reciprocate.

defendants in the initial discovery process. Thus, this is not a situation where either party would be deprived of access to documents. Moreover, with the exception of BLI, plaintiffs are two Venezuelan banks, a Venezuelan investment company and a division of the Venezuelan government. These parties would obviously have better access to their own documents in Venezuela as opposed to Florida. At the very least, the Court finds this factor is in equipoise.

### Access to Witnesses

The plaintiffs concede that the number of fact witnesses is split almost equally between the United States and Venezuela. (*See* Pls. Consolidated Opp'n to Defs. Mot. to Dismiss, p. 12). There are also several witnesses in other parts of the world. *Id.* No one country can claim an overwhelming number of witnesses. It appears that the relative advantages or disadvantages related to the cost of obtaining attendance of witnesses are at or near equipoise. Likewise, any difficulties a court might encounter regarding witnesses whose attendance can not be compelled may be resolved by the use of deposition testimony or letters rogatory. In light of the Court's deference to the plaintiffs' choice of forum, the private interest factors are considered to be in equipoise. An analysis of the public interest factors in this case is therefore warranted.

### C. Public Interests

■ In considering public interests, some important factors are the sovereign's interest in deciding the dispute, the administrative burdens posed by trial, and the court's application of law with which it is not familiar. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506–07, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947). In opposing this motion plaintiffs contend that BLI should not be deprived of its right to pursue its claims in this forum. The Court finds this argument persuasive. Accordingly, the claims of plaintiff BLI should be severed from the claims of the other plaintiffs pursuant to Federal Rule of Civil Procedure 21.

The American interests in this matter are limited to the transactions involving BLI.

Venezuela has a substantial interest in adjudicating the remaining claims. This interest justifies requiring the plaintiffs to defend this action in the courts of their own nation. Considerations of efficiency and cost strongly favor dismissal in part. Likewise, the possibility that foreign law will apply as to the claims of the other plaintiffs, favors the Venezuelan forum. *See Proyectos Orchimex de Costa Rica*, 896 F.Supp. 1197, 1203 (holding that the possibility that forum law will apply weighs strongly in favor of dismissal).

### II. Conclusion

■ Having duly considered the motions, responses and pertinent portions of the record, it is **ORDERED AND ADJUDGED** as follows:

1. Pursuant to Federal Rule of Civil Procedure 21, Plaintiff BLI's claims are **SEVERED** from the claims of the other plaintiffs.

2. The Defendants' Motions to Dismiss on Forum Non Conveniens grounds is **GRANTED** without prejudice as to the claims of Plaintiffs BLCA, Maracaibo, Consorcio and FOGADE.

3. Dismissal is conditioned on the following: [6]

(a) The defendants must submit to the jurisdiction of the Venezuelan courts and designate a representative in Venezuela to accept service of process on their behalf;

(b) The defendants waive any statute of limitations defense that would make a Venezuelan forum unavailable;

(c) Defendants shall make available all relevant documents and witnesses within their control; and

(d) Defendants shall satisfy any judgment entered in Venezuela and can not contest any such judgment on the grounds that it was entered in their absence.

It is further **ORDERED AND ADJUDGED** that the defendants shall have fifteen (15) days from the entry of this order to file an affidavit with the Court agreeing to the above conditions. The plaintiffs shall have the right to reinstate this action within

---

**6.** Defendants Hans Abate and Alejandro Rivera are not subject to the following conditions as they are only alleged to have participated in the BLI operations.

ninety (90) days after failure of any defendant to comply with the above conditions. Failure to move for reinstatement of the case within the time frame set forth will result in a final dismissal.