Carlos **WARTER**, Carolina Warter, and Gulden, S.A., a Uruguayan corporation, Plaintiffs,

v.

**BOSTON SECURITIES, S.A.,** an Argentine Corporation, Fleet National Bank, N.A., Mario Rossi, Eduardo Scuderi, Xavier Capdevielle, Patricio Pusso and the International Bank of Miami, N.A., Defendants.

Nos. 03–81026–CIV–RYSKAMP, 03–81026–CIV–VITUNAC.

United States District Court, S.D. Florida.

Dec. 15, 2004.

William A. Norton, Searcy Denney Scarola, et al., West Palm Beach, FL, for Plaintiff.

Jose I. Astigarraga, Edward M. Mullins, Scott A. Burr, Annette C. Escobar, Heidi A. Schulz, Astigarraga Davis Mullins & Grossman, P.A., Miami, Florida, for Defendants Boston Securities, N.A. and Fleet National Bank, N.A.

Traci H. Rollins, Steel Hector & Davis LLP, West Palm Beach, FL, for Defendant International Bank of Miami.

Jose A. Casal, Holland & Knight LLP, Miami, FL, for Defendant Xavier Capdevielle.

## ORDER GRANTING DEFENDANTS BOSTON SECURITIES, N.A. AND FLEET NATIONAL BANK N.A.'S MOTION TO DISMISS ON FORUM NON CONVENIENS GROUNDS

RYSKAMP, District Judge.

THIS CAUSE comes before the Court pursuant to Defendants Boston Securities, S.A. ("BSEC") and Fleet National Bank, N.A.'s ("FLEET") Motion to Dismiss on forum non conveniens grounds, filed June 4, 2004 [DE 72]. Plaintiffs Dr. Carlos Warter, M.D., Ph.D., Carolina Warter (collectively, "Warters") and Gulden, S.A. ("Gulden") responded on July 27, 2004 [DE 86]. BSEC and FLEET replied on September 8, 2004 [DE 100]. This motion is ripe for adjudication.

## I. BACKGROUND

### A. Procedural History

Plaintiffs bring this action against BSEC, FLEET, Mario Rossi ("Rossi"), Eduardo Scuderi ("Scuderi"), Xavier Capdevielle ("Capdevielle"), Patricio Pusso ("Pusso") and the International Bank of Miami, N.A. ("IBOM") for, inter alia, alleged embezzlement of funds invested with BSEC, an Argentine securities brokerage. The Warters filed this action in the Circuit Court in and for the Fifteenth Judicial Circuit for Palm Beach County on May 30, 2003 and filed a First Amended Complaint in that Court on September 29, 2003.

BSEC, FLEET and IBOM removed the action to this Court on November 7, 2003 pursuant to the Edge Act, 12 U.S.C. § 632. On March 22, 2004 [DE 55], this Court denied the Warters' motion to remand and granted in part and denied in part BSEC, FLEET and IBOM's motions to dismiss. Plaintiffs filed a Second Amended Complaint on May 17, 2004, adding Gulden as a Plaintiff. BSEC and FLEET have now moved to dismiss on the grounds that Argentina is the most convenient forum for adjudication of this action.[1]

### 1. The Parties

Gulden is the Warters' wholly owned Uruguayan corporation. (2d Am. Compl.¶ 2.) Dr. Warter, a U.S. citizen since 1985, has resided in the U.S. since 1991 and Florida since 1997. (Carlos Warter Aff. ¶ 2-3.) Carolina Warter has resided in the U.S. since 1991 and Florida since 1997. (Carolina Warter Aff. ¶ 2-3.) The Warters currently reside in Dade County. (2d Am.Compl.¶ 1.)

BSEC is an Argentine securities brokerage with its principal place of business in Buenos Aires, Argentina. (2d Am. Compl. ¶ 3; de las Carreras Decl. ¶ 3.) BSEC is 51 percent owned by FLEET, a national bank chartered under federal law. (2d Am. Compl. ¶ 4; de las Carreras Decl. ¶ 14.) On February 1, 2000, FLEET merged with BANKBOSTON, N.A. ("BBNA"); the Bank of Boston–Florida, National Association, Boca Raton, Florida ("BKB–Florida"); Fleet Trust and Investment Services Company, National Association, Stuart, Florida ("Fleet Trust") and Fleet Bank, F.S.B., Boca Raton, Florida ("Fleet–FSB"). The pre-merger companies and FLEET are now one and the same entity, FLEET. Both before and after the merg-

---

1. BSEC and FLEET have also moved to dismiss this action on Rule 12(b)(6) grounds. IBOM, Scuderi, Capdevielle, Pusso and Rossi have not joined the forum non conveniens motion. IBOM has also made a Rule 12(b)(6) motion, albeit on different grounds.

er, BBNA conducted business in Argentina through a branch licensed under Argentine law, known in Argentina as BankBoston National Association Sucrusal Buenos Aires, or "BankBoston Argentina." Plaintiffs claim that BankBoston Argentina and FLEET are the same corporation even though BankBoston Argentina is registered or licensed in Argentina. (2d Am. Compl.¶ 4.)

Pusso is an Argentine securities broker and an alleged former BSEC employee. *Id.* ¶ 13. Pusso often traveled to Florida to conduct and solicit securities business, to meet with clients and to obtain investment money from clients. *Id.* ¶ 15. As of May 18, 2000, Pusso was in bankruptcy in Argentina. *Id.* ¶ 13–14; Ex. B to Motion to Dismiss. Rossi, also an Argentine, ran and managed Linstal Securities, S.A. ("Linstal"), BSEC's predecessor. Rossi continued with BSEC in a managerial role after FLEET purchased Linstal in 1993. (2d Am.Compl.¶ 14.) Neither Pusso nor Rossi has been served with process. Scuderi and Capdevielle reside in Florida. *Id.* ¶ 10, 11. Scuderi has filed bankruptcy, and, as of April 22, 2002, all debts and claims against him have been discharged. (Ex. C. to Motion to Dismiss.) IBOM is a federally chartered bank conducting business in Florida. (2d Am.Compl.¶ 12.)

### 2. Factual Background

In 1992 or 1993, pursuant to the advice of Pusso, a Linstal investment broker, the Warters invested approximately $600,000.00 U.S. dollars in Linstal in an account titled to Gulden. *Id.* ¶ 24. Plain-

tiffs claim that, after FLEET purchased Linstal in 1993, their assets were transferred to a BSEC account titled to Gulden. *Id.* From 1993 through 1995, the Warters met at least twice a year with Pusso at his BSEC desk in Argentina. Pusso traveled to the Warters' Palm Beach County residence in 1996 and 1998 to collect checks for deposit with BSEC. *Id.* In 1997, Plaintiffs established, at Pusso's request, three corporations in the Bahamas to receive assets.[2] *Id.;* Response, p. 19. From 1993 through 1999, BSEC sent monthly account statements to the Warters in Florida. *Id.* ¶ 24. Plaintiffs allege that, from 1993 through 1999, "the Warters and/or Gulden"[3] deposited approximately $5,000,000.00 with BSEC and that, as of May of 1999, Plaintiffs believed their BSEC investments exceeded $33,000,000.00. *Id.* ¶ 30.

Sometime after May 31, 1999, the Warters received an anonymous letter warning them about the security of their investments. *Id.* ¶ 30. Over the next several months, they were told that the money was safe in a neighboring country and that it would be returned if they surrendered all BSEC account statements and papers. *Id.* On August 31, 1999, Dr. Warter's counsel wrote to BankBoston's Massachusetts headquarters, demanding $30,931,437.00 in U.S. dollars as compensation for the alleged losses. (Ex. 1 to Response.) On September 17, 1999, Dr. Warter brought documentation of his alleged losses to BSEC headquarters in Buenos Aires and demanded payment of over $30,000,000.00

---

**2.** The Second Amended Complaint alleges that Pusso instructed the Warters to open the corporations in the British Virgin Islands. *Id.* ¶ 24.

**3.** The Warters allege that both they and Gulden are proper parties, claiming that further discovery is necessary to determine (1) the

number of accounts they had with BSEC, and (2) whether the alleged theft occurred prior to or subsequent to deposit of the funds with BSEC. *Id.* ¶ 26. The Warters, having added Gulden as a Plaintiff, cannot claim for purposes of defending the forum non conveniens motion that they, Florida residents, were the only injured parties.

U.S. dollars. (Maggio Decl. 4/28/04, ¶ 4(1)).

Plaintiffs claim that, unbeknownst to them, Pusso had a history of unethical behavior as an investment broker. Plaintiffs allege that BSEC asked Pusso to resign in May of 1995 due to problems with his accounts. (2d Am.Compl.¶ 19.) Although Pusso resigned, Plaintiffs allege that BSEC allowed Pusso to retain control over his accounts and to continue as an off-site financial consultant with authority to manage BSEC accounts. *Id.* Plaintiffs allege that they were never informed of Pusso's change in status. *Id.* ¶ 17. In October of 1996, when Dr. Warter traveled to Argentina to discuss his account with Rossi, he received printouts indicating that several of Plaintiffs' accounts had never been opened. *Id.* ¶ 24. Plaintiffs allege that, in approximately February 1997, BSEC and Rossi discovered shortfalls in another BSEC account in Argentina. *Id.* ¶ 21. They claim that Rossi was involved in the discovery of the shortfalls and that he allowed Pusso to make up the shortfalls with money from other BSEC clients' accounts. *Id.* Plaintiffs maintain that Pusso's alleged misconduct also extended to their BSEC monies, contending that Pusso falsified the records in the "Warters' and/or Gulden, S.A.'s account" to hide unauthorized withdrawals and to show fictitious gains. *Id.* ¶ 26. Plaintiffs also allege that Pusso never deposited funds in the three foreign corporations. *Id.* ¶ 24.

Plaintiffs claim that Pusso operated an investment company through IBOM with the knowledge of IBOM, Scuderi, Capdevielle and Rossi. *Id.* ¶ 54. From 1992 through 1999, Scuderi and Capdevielle allegedly "assisted Pusso in stealing the Warters and/or Gulden, S.A.'s money" and laundering it, along with other clients' funds, through IBOM. *Id.* ¶ 56, 58. Plaintiffs claim that the transfers to IBOM referred to "non-existent or unidentifiable" persons or accounts and therefore violated federal wire transfer law. *Id.* ¶ 59–61. Plaintiffs also assert that "IBOM may have helped form [the three foreign] corporations [designated to receive Plaintiffs' funds] along with Pusso's help." *Id.* ¶ 24.

The Second Amended Complaint consists of six counts, each of which Plaintiffs claim to have brought within the Argentine and/or Uruguayan statute of limitations. *Id.* ¶ 2. Count I, fraud, brought against BSEC and Pusso, alleges that BSEC and Pusso misrepresented to the "Warters and/or Gulden, S.A." that the money the "Warters and/or Gulden, S.A." gave to Pusso went to the purchase of securities. *Id.* ¶ 32. Plaintiffs allege that BSEC is vicariously liable for the alleged fraud because Pusso was acting in the course and scope of his duties as a BSEC employee or agent. *Id.* ¶ 34.

Count II, negligent misrepresentation, brought against BSEC, alleges that BSEC breached a duty of care to provide proper instruction to customers on how to deposit assets with BSEC in Argentina, to safeguard BSEC deposits and to communicate account status properly. *Id.* ¶ 38, 42, 46.

Count III, negligent supervision, brought against FLEET and Rossi, alleges that FLEET and Rossi knew that Pusso was stealing money from client accounts, facilitated Pusso's theft and actively prevented BSEC from taking steps to stop Pusso. Plaintiffs allege that FLEET and Rossi assumed BSEC's alleged duty of reasonable care and supervision with respect to Pusso and breached these duties as to Warter and/or Gulden. *Id.* ¶ 42, 47–48, 50.

Count IV, conversion, brought against Pusso, Scuderi, Capdevielle, Rossi and IBOM, alleges that Pusso laundered their BSEC funds through IBOM with the assistance of Scuderi, Capdevielle and Rossi

from 1992 through 1998. *Id.* ¶ 54–55, 58. Plaintiffs allege that IBOM's acceptance of the transactions was in violation of 12 C.F.R. § 210 because the transfers were directed to "a person and account which were 'non-existent or unidentifiable' to IBOM." *Id.* ¶ 60.[4]

Count V, conspiracy to commit fraud, brought against Pusso, Rossi, BSEC and FLEET, alleges that Pusso, Rossi, BSEC and FLEET formed a conspiracy in Argentina to conceal from clients the status of their investments and steal funds from client accounts in Argentina, including the Gulden account. Plaintiffs allege that Rossi, BSEC and FLEET remained passive in the face of Pusso's alleged misconduct, put a "moratorium" on contact with Pusso's clients, accepted in Argentina alleged unauthorized instructions from Pusso to close the Gulden account without the Warters' knowledge, allowed Pusso to proofread a letter to BSEC clients whose accounts allegedly had been embezzled from but which letter did not reveal the alleged embezzlement and allowed Pusso to steal money from BSEC accounts to pay off other clients. *Id.* ¶ 72. Plaintiffs also allege that Pusso, acting on behalf of the alleged co-conspirators, made false statements to the "Warters and/or Gulden, S.A." that their funds would be used to purchase and sell repos and other securities in Argentine financial markets and that funds wired according to his instructions would be invested with BSEC. *Id.* ¶ 73–74.

Count VI, breach of fiduciary duty, brought against Pusso, Rossi, BSEC and FLEET, alleges that these Defendants and "Warters and/or Gulden" shared a special relationship of trust such that Plaintiffs relied on their "superior and professional knowledge in investing and [therefore] trusted [them] to appropriately invest their monies or funds." *Id.* ¶ 82–83. Plaintiffs allege that, because of this special relationship, Defendants had a duty to disclose all material facts pertinent to their investing but failed to do so. *Id.* ¶ 83. Plaintiffs seek compensatory and punitive damages.

The facts surrounding Pusso's alleged fraud have spawned a variety of legal proceedings, both in the United States and Argentina. Currently pending before Judge Eliseo Ruben Otero of the Ninth Criminal Court of the City of Buenos Aires is Case No. 88.243, a criminal action for attempted fraud brought against Pusso and Dr. Warter in September 1999. (Maggio Decl. ¶ 4(n); 4(a)).[5] The Argentine court is investigating allegations that Dr. Warter and Pusso attempted to defraud BSEC and is specifically examining the transactions relating to the Gulden account and Pusso's alleged falsification of BSEC documents. *Id.* ¶ 4(a)(i). BSEC alleges that Dr. Warter knowingly used fraudulent account documents that overstated the value of his BSEC investments when he demanded compensation for his alleged losses. *Id.* ¶ 4(1).

Argentine criminal proceedings occur in three stages. The first stage, called a "summary proceeding," consists of investigative examination of written documents. The second stage is an "informative critique," at which time the parties proffer

---

4. IBOM has filed a motion to dismiss pursuant to Rules 12(b)(6) and 10(b), alleging that Plaintiffs have failed to allege each element of a conversion claim under Florida law and that Plaintiffs have brought a claims for conversion and violation of 12 C.F.R. § 210 as a single count.

5. Pablo Maggio, the source of BSEC and FLEET's information regarding the criminal proceeding, is an attorney for BSEC. Plaintiffs do not take issue with Maggio's version of the criminal proceeding.

opinions regarding the completion of the summary proceeding and the commencement of trial. The final stage is the actual trial, which is oral and is carried out before a three-judge panel. *Id.* ¶ (4)(d).

The summary proceeding stage of the criminal case has concluded. On November 15, 2001, Judge Otero ruled that probable cause existed that Pusso and Dr. Warter were guilty of attempted fraud against BSEC:

> Warter was well aware of the management of his account and of his monies, and ... had an understanding with Pusso beyond what any other investor may have with the account officer of a company that handles his portfolio .... contrary to having been dispossessed of the millionaire amount claimed, he attempted to take advantage of a situation that was perfectly known to him—falsified withdrawal signature and false account statements—to deceive the accusers (BSEC) and receive payment....

*Id.* ¶ 4(c)(ii). Pusso has implicated Dr. Warter, claiming that he asked him to send false account statements showing inflated investment numbers to deceive investors. *Id.* ¶ 4(a)(i). A court-appointed expert calligraphist has reviewed the documents allegedly evidencing the funds transfers and has concluded that some of the documents are false. *Id.* ¶ (4)(a)(iv). Judge Otero ordered the indictment of Dr. Warter and the garnishment of the Warters' assets in the amount of $40,000,000.00 Argentine pesos. The Argentine Court of Appeals affirmed the indictment, but reduced the garnishment to $30,000,000.00 pesos. *Id.* This ruling is not subject to appeal. *Id.* The Argentine prosecutor has elected to pursue this action and has provided the Argentine court with a written explanation of its decision:

> During the course of the investigation, Carlos Warter['s] ... explanations have

been proven false. Thanks to the way the investigations have been conducted, the initial doubts about the image of an inexperienced and trusting client that the accused maintained from the beginning, have been clarified. Thus, the assurance of the maneuvers created by and benefitting Warter has been established, which attempted the recognition of a debt of nonexistent investments by 'Boston Securities'. Supporting this belief is the evidence of the transactions agreed to by the accused, whose beneficiaries were persons related to or close to him, with whom he maintained a commercial relationship, and in some cases the need to obtain exaggerated benefits.

*Id.* ¶ (4)(f)(ii). A three-judge panel will set a trial date, and a final decision should issue within 18 to 24 months of May of 2004, or sometime between November 2005 through May 2006. *Id.* ¶ 4(c).

On the domestic front, the defendants in the instant case were subject to a consolidated action brought in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, *Shinitzky v. Boston Securities, S.A.,* C.A. No. CL 00–2328 AD and *Astel v. Boston Securities. S.A.,* C.A. No. CL 00–2038 (*"Shinitzky–Astel"*), several years prior to the institution of this action. The *Shinitzky–Astel* Plaintiffs also alleged that Pusso stole the money they invested with BSEC. (*Shinitzky–Astel* Response, p. 1.) Plaintiffs sued BSEC and FLEET for negligence; BSEC and Pusso for fraud; BSEC, FLEET and Pusso for violation of Fl. Stat. § 517.301 (fraudulent transactions); BSEC, FLEET and Pusso for violation of Fl. Stat. § 812.014 (civil theft); Pusso, Scuderi and Capdevielle for conversion; and IBOM for violation of Fla. Stat. § 670.207 (misdescription of beneficiary). (Reply, Ex. 20, ¶ 36–113.) The Fifteenth Circuit denied BSEC, BBNA and Rossi's motion to dismiss on forum

non conveniens grounds and eventually entered a judgment against Pusso for $30,000,000.00 U.S. dollars. (Response, p. 6.) Plaintiffs argue that this Court should follow the Fifteenth Circuit's lead and deny the motion to dismiss.

## II. *LEGAL STANDARD*

Pursuant to the doctrine of forum non conveniens,

'when an alternative forum has jurisdiction to hear [a] case, and when trial in the chosen forum would establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience, or when the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in the exercise of its sound discretion, dismiss the case, even if jurisdiction and proper venue are established.

*American Dredging Co. v. Miller,* 510 U.S. 443, 447–48, 114 S.Ct. 981, 985, 127 L.Ed.2d 285 (1994) (quoting *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241, 102 S.Ct. 252, 258, 70 L.Ed.2d 419 (1981)). *See also Sibaja v. Dow Chemical Co.,* 757 F.2d 1215, 1218 (11th Cir.1985) (" 'dismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court and where the plaintiff is unable to aver any specific reasons of convenience supporting his choice' ") (quoting *Piper Aircraft Co.,* 454 U.S. at 249, 102 S.Ct. at 262). "In cases involving foreign defendants, a determination that trial in the plaintiff's chosen forum would be burdensome is sufficient to support dismissal on grounds of forum non conveniens." *Trujillo v. Banco Central Del Ecuador,* 35 F.Supp.2d 908, 915 (S.D.Fla.1998) (citing *Piper Aircraft Co.,* 454 U.S. at 259, 102 S.Ct. at 252).

■ The movant must demonstrate that "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Leon v. Million Air, Inc.,* 251 F.3d 1305, 1311 (11th Cir.2001). "Since the touchstone of forum non conveniens analysis is convenience, controlling weight cannot be given to any one factor in the balancing process or the doctrine will lose much of the flexibility that is its essence." *Banco Latino v. Gomez Lopez,* 17 F.Supp.2d 1327, 1331 (S.D.Fla.1998) (citing *C.A. La Seguridad v. Transytur Line,* 707 F.2d 1304, 1307 (11th Cir.1983); *Piper Aircraft Co.,* 454 U.S. at 249, 102 S.Ct. at 262, 102 S.Ct. 252).

■ The Eleventh Circuit reviews dismissals on forum non conveniens grounds for abuse of discretion. *Satz,* 244 F.3d at 1282. A court granting a motion to dismiss on forum non conveniens grounds " 'abuses its discretion when it fails to balance the relevant factors.... [W]here the court does not weight the relative advantages of the respective forums but considers only the disadvantages of one, it has abused its discretion.' " *Id.* (quoting *C.A. La Seguridad,* 707 F.2d at 1308). "When a district court 'has considered all relevant public and private interest factors, and [when] its balancing of those factors is reasonable, its decision deserves substantial deference.' " *Id.* (quoting *Piper Aircraft Co.,* 454 U.S. at 257, 102 S.Ct. at 266).

## III. *DISCUSSION*

### A. Argentina is an Adequate Available Forum

■ The first step in forum non conveniens analysis is determining whether an available alternative forum exists. "[T]he burden of establishing whether an alterna-

tive forum exists is not a heavy one." *Banco Latino,* 17 F.Supp.2d at 1331 (citing *Carnival Cruise Lines v. Oy Wartsila Ab,* 159 B.R. 984, 990 (S.D.Fla.1993)). "An adequate forum need not be a perfect forum." *Satz,* 244 F.3d at 1283. This requirement usually "will be satisfied when the defendant is 'amenable to process' in the other jurisdiction." *Id.* (quoting *Piper Aircraft Co.,* 454 U.S. at 255 n. 22, 102 S.Ct. at 265 n. 22). An alternative forum is inadequate when the remedy it affords is " 'clearly unsatisfactory' " or is essentially " 'no remedy at all.' " *Id.* (quoting *Piper Aircraft Co.,* 454 U.S. at 255, 255 n. 22, 102 S.Ct. at 265, 265 n. 22).

If the alternative forum is unable to assert jurisdiction over each defendant, or if the remedy afforded by the alternative forum is so inadequate so as to be a remedy in name only, the inquiry ends and the Court will not analyze how transfer would affect private or public interests. *Perusahaan Umum Listrik Negara Pusat v. M/V Tel Aviv,* 711 F.2d 1231, 1238 (5th Cir. 1983) ("If no alternative forum is available to plaintiff, a forum non conveniens dismissal should not be granted."); *Lake v. Richardson–Merrell, Inc.,* 538 F.Supp. 262, 270 (N.D.Ohio 1982) ("Where no alternative forum exists, the court may deny the defendant's motion to dismiss for forum non conveniens and need not consider the private and public factors to determine which forum is more convenient.").

■ A "defendant's submission to the jurisdiction of an alternate forum renders that forum available for purposes of forum non conveniens analysis." *Veba–Chemie A.G. v. M/V Getafix,* 711 F.2d 1243, 1245 (5th Cir.1983); *Leon,* 251 F.3d at 1311. When a defendant agrees to waive jurisdiction in the alternative forum, a court may dismiss the case on forum non conveniens grounds, retain jurisdiction, and reinstate the case if the foreign forum refuses to accept jurisdiction. *Leon,* 251 F.3d at 1313 (Ecuador an available forum although Ecuadorian law may have prevented re-filing of dismissed action when district court would re-assert jurisdiction should Ecuadorian courts not take the case). In cases involving multiple defendants, when dismissal on forum non conveniens grounds would further "the administration of justice," but venue in the alternative forum is not appropriate for one or more of the defendants, the Court may sever claims against those defendants if they are alleged to be only indirectly connected to the conduct forming the primary basis of the action. *Wyndham Assocs. v. Bintliff,* 398 F.2d 614, 618 (2d Cir.1968). "Otherwise, a plaintiff could preclude the court from considering whether transfer would serve the interest of justice by including a defendant, not subject to suit in the convenient district, who was in some manner peripherally involved." *Id.* at 619. *See also* Fed. R.Civ.P. 21 ("Any claim against any party may be severed and proceeded with separately.").

■ BSEC and FLEET present the declaration of Professor Keith Rosenn, who explains that Argentine law provides several bases allowing Argentina to assert jurisdiction over each Defendant in this action. Article 5(4) of the Argentine Code of Civil and Commercial Procedure provides that "[i]n personal actions stemming from delicts and quasi-delicts, [intentional and unintentional torts,] [the judge with jurisdiction] is the one at the place of the act or the domicile of the defendant, at the election of the plaintiff." *Id.* (Rosenn Decl. ¶ 18.) Article 5(5) provides that "[w]hen there are multiple defendants, in personal actions dealing with indivisible or joint and several obligations, [the judge with jurisdiction] is that of the domicile of any of the [defendants], at the election of

the plaintiff." *Id.* ¶ 20.[6] Article 1081, to be read in conjunction with Article 5(5), provides that "[t]he obligation to repair the damages caused by a delict is joint and several with respect to all who have participated therein as principals, advisors and accomplices, even if the act is not punishable by the criminal law." *Id.* Article 2 provides that a party may consent to jurisdiction in writing. *Id.* ¶ 21.

Pusso, Rossi and BSEC are subject to the jurisdiction of Argentine courts pursuant to Article 5(4) because Argentina is the place of their domicile, because the alleged fraud occurred in Argentina and because the injury occurred to Plaintiffs' BSEC monies in Argentina. IBOM, Scuderi and Capdevielle are subject to the jurisdiction of Argentine courts pursuant to Article 5(4) because the alleged fraud occurred in Argentina and because the alleged injury occurred to the BSEC monies in Argentina. IBOM, Scuderi and Capdevielle are also subject to Argentine jurisdiction pursuant to Articles 5(5) and 1081 because they are alleged to have participated in the conversion of Plaintiffs' funds in conjunction with Pusso, an Argentine. Severance of the claims against IBOM, Scuderi and Capdevielle is not necessary to grant the motion to dismiss, as each of these Defendants is subject to jurisdiction in Argentina. FLEET is subject to Argentine jurisdiction pursuant to Article 2 because it and BSEC have so consented. Specifically, they stipulate that if this Court grants its motion to dismiss and the action is re-filed in Argentina within 120 days of the dis-

missal, they will (a) not contest the personal jurisdiction of the Argentine courts, (b) will accept service of process issued from the appropriate court of Argentina by personal service or registered mail; and (c) will not assert any defenses based upon the statute of limitations, laches, or the passage of time from the date of which the Amended Complaint was originally filed in this action.

The *Shinitzky–Astel* Court ruled that BSEC and FLEET failed to demonstrate that Argentina had jurisdiction over IBOM, Scuderi and Capdevielle.[7] Plaintiffs in that action alleged that Pusso, Scuderi and Capdevielle converted their funds and that IBOM violated Florida's wire transfer law. The Fifteenth Circuit found no evidence that IBOM committed any wrongdoing in Argentina or had any agents or co-conspirators in Argentina. Furthermore, BSEC and FLEET's expert "was admittedly unfamiliar with the details of the claim against [IBOM] and did not adequately explain how Argentina could obtain personal jurisdiction over [IBOM]." (*Shinitzky–Astel Order*, ¶ 2.) The Fifteenth Circuit declined to sever IBOM, reasoning that the case against BSEC and FLEET required testimony about IBOM's alleged role in the fraud. Faced with an unseverable defendant not subject to jurisdiction in the alternate forum, the Fifteenth Circuit denied the motion to dismiss. Plaintiffs in the instant case allege that IBOM, Pusso, Scuderi and Capdevielle violated federal wire transfer law and

---

**6.** "This provision, which confers territorial jurisdiction upon the court of the domicile of any of the defendants when there are multiple defendants, applies not only to obligations based upon contracts, but also to any other source, such as those based upon tort or law, with the sole limitation that they be indivisible or joint obligations, but it also extends to all subjects where one exercises personal actions against multiple defendants." Hector

Eduardo Leguisamon, *Lecciones de Derecho Procesal Civil*, 40–41 (2001).

**7.** Florida applies the federal forum non conveniens standard. *See Kinney System, Inc. v. Continental Ins. Co.*, 674 So.2d 86, 93 (Fla. 1996) ("[T]he time has come for Florida to adopt the federal doctrine of forum non conveniens.").

tortiously converted their funds. Professor Rosenn has explained that, pursuant to Articles 5(5) and 1081, a non-Argentine's commission of a tort with an Argentine subjects them to jurisdiction.

Each of Plaintiffs' claims, fraud, negligent misrepresentation, negligent supervision, conversion, conspiracy to commit fraud and breach of fiduciary duty, is available under Argentine law. (Rosenn Decl. ¶ 22.) Although Argentina does not provide for awards of punitive damages, differences in law do not render a forum inadequate. *Trujillo,* 35 F.Supp.2d at 915.

Plaintiffs argue that the Argentine civil justice system would require at least five years to adjudicate their action. Plaintiffs' estimate rests on the assumption that their case would be "put on hold" until the conclusion of the criminal proceeding. (de Michele Decl. ¶ 84.) While Argentine law provides that the outcome of a criminal case has preclusive effect on civil litigation, a civil suit involving the same facts as a criminal matter may be prosecuted simultaneously. The criminal matter must be fully resolved prior to entry of a final order in the civil matter, but nothing prevents the active prosecution of the civil action during the pendency of the criminal case. (Rosenn Decl. ¶ 29–30; Maggio Decl. 9/8/04 ¶ 6–7.) Plaintiffs agree with the Defendants' estimate that the criminal proceeding will conclude between November 2005 and May 2006. Moreover, the simultaneous prosecution of both actions will likely speed both cases, as many of the facts overlap. "The existence of parallel civil and criminal proceedings in [a foreign jurisdiction] lends further support to the adequacy of [that] forum. [The] court [in that forum] will be far more adept at applying the law of its own forum, particularly where it is already entertaining lawsuits involving the same subject matter."

*Banco Latino,* 17 F.Supp.2d at 1332 (citing *Carnival Cruise Lines,* 159 B.R. at 1002).

Even if resolution of the instant case in Argentina would require up to five years, such time is insignificant for purposes of evaluating the adequacy of an alternate forum. "[F]ear of delays in Argentine courts ... do[es] not render Argentina an inadequate forum." *Satz,* 244 F.3d at 1283. *See also Hidrovia, S.A. v. Great Lakes Dredge & Dock Corp.,* No. 02 C 5408, 2003 WL 2004411 at *4 (N.D.Ill. Apr.28, 2003) (expert testimony that the average case resolution time for Argentine courts is three to four years is insufficient to preclude dismissal); *Eastman Kodak Co. v. Kavlin,* 978 F.Supp. 1078, 1085 n. 6 (S.D.Fla.1997) (five year delay in Bolivia did not render Bolivian courts inadequate); *Bhatnagar v. Surrendra Overseas, Ltd.,* 52 F.3d 1220, 1227 (3d Cir.1995) (25 year delay renders alternative forum inadequate, but delays of two or three years are negligible for forum non conveniens purposes); *Leon,* 251 F.3d at 1314 (evidence of Ecuadorian justice system's lack of financial resources, widespread use of manual typewriters, lack of computers in trial courts, ratio of 1,000 cases per judge and at least one commercial case pending for 12 years was insufficient to demonstrate inadequacy of forum).

Plaintiffs also claim that the Argentine justice system is too corrupt to be an adequate alternate forum. Plaintiffs allege that Judge Otero is biased against Dr. Warter because he referred to him as a "bombastic character" and denied his request that Rossi's office be searched. These actions are not evidence of judicial bias. *See Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 ("Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion....[J]udicial remarks during the course of a trial that are disap-

proving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge."). "[A] judge has the duty to judge...." *Henkel v. Lickman*, 284 B.R. 299, 307 (Bkrtcy.M.D.Fla.2002). Plaintiffs also complain that Dr. Warter is the only one of Pusso's alleged victims to face criminal prosecution. This argument overlooks the fact that the Argentine prosecutor, not merely BSEC, is pursuing the criminal case.

Both parties have submitted extensive social science research and news articles relating to the trustworthiness of the Argentine judicial system. For example, Plaintiffs cite a 2002 Latinobarometro poll indicating that, between 1996 and 2002, public confidence in judicial systems dropped approximately 8.1 percent among 17 Latin American countries (de Michele Decl., Ex. 8.) A 2003 poll by the same organization indicated that, between 2002 and 2003, public confidence in Latin American judicial systems dropped in 14 of 17 countries surveyed, but actually *rose* in Argentina. *See* Reply, Ex. 4. Plaintiffs also refer to a 2000–01 World Bank study giving Argentina poor marks for "rule of law" and "corruption" and grouping Argentina with Ethiopia and Nepal on the latter score. (de Michele Decl. ¶ 32.) Yet the same study ranked Argentina as high as, and higher, than Columbia, Ecuador, Guatemala, Honduras and Venezula, all countries federal courts have deemed adequate. *See Iragorri v. United Tech. Corp.*, 46 F.Supp.2d 159, 162 (D.Conn.1999) (Columbia), *vacated on other grounds*, 274 F.3d 65, 75 (2d Cir.2001); *Leon*, 251 F.3d at 1315–16 (Ecuador); *Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974, 982 (2d Cir.1993); *Banco Latino*, 17 F.Supp.2d at 1334 (Venezuela); *Stalinski v. Bakoczy*, 41 F.Supp.2d 755, 761–62 (S.D.Ohio 1998) (Honduras); *Torres v. Southern Peru Copper Corp.*, 965 F.Supp.

899, 903 (S.D.Tex.1996); *Polanco v. H.B. Fuller Co.*, 941 F.Supp. 1512, 1527 (D.Minn.1996) (Guatemala); *Delgado v. Shell Oil Co.*, 890 F.Supp. 1324, 1337 (S.D.Tex.1995) (Honduras, Nicaragua, Guatemala).

The Court will not review the parties' dueling social science data with the intent of "sit[ting] in judgment upon the integrity of the entire [Argentine] judiciary." *Gonzales v. P.T. Pelangi Niagra Mitra Int'l*, 196 F.Supp.2d 482, 488 (S.D.Tex.2002). "[I]t is not the business of our courts to assume responsibility for supervising the integrity of the judicial system of another sovereign nation." *Banco Latino*, 17 F.Supp.2d at 1332 (quoting *Blanco*, 997 F.2d at 982). *See also Gonzales*, 196 F.Supp.2d at 489 (citing *Parex Bank v. Russian Sav. Bank*, 116 F.Supp.2d 415, 423 (S.D.N.Y.2000)) (adversely reviewing the quality of another nation's criminal justice system a breach of international comity); *Monegasque de Reassurances S.A.M. v. NAK Naftogaz of Ukraine & State of Ukraine*, 158 F.Supp.2d 377, 385 (S.D.N.Y.2001) ("forum non conveniens doctrine serves precisely to avert ... unnecessary indictments by our judges condemning the sufficiency of the courts and legal methods of other nations.").

█ Even if the Court were to comment on the parties' submissions regarding the state of the Argentine judiciary, "general allegations of corruption or bias on the part of the foreign forum will not prevent a dismissal on forum non conveniens grounds." *Rustal Trading US, Inc. v. Makki*, 17 Fed.Appx. 331, 335 (6th Cir. 2001). *See also El–Fadl v. Central Bank of Jordan*, 75 F.3d 668, 678 (D.C.Cir.1996) ("general allegations of corruption in the judicial system" of Jordan insufficient to render alternative forum inadequate); *Mercier v. Sheraton Int'l, Inc.*, 981 F.2d

1345, 1351 (1st Cir.1992) (claims that Turkish courts are biased against Americans and foreign women insufficient to render Turkey an inadequate forum); *Gonzales,* 196 F.Supp.2d at 487–88 ("newspaper articles, statements by prominent Indonesian politicians, the results of a survey … a World Bank report and statements by the United States government" insufficient to render Indonesia an inadequate forum). Only evidence of *actual corruption in a particular case* will warrant a finding that an alternate forum is inadequate. For example, in *Eastman Kodak,* Casa Kavlin, Kodak's onetime distributor in Bolivia, filed a criminal complaint in Bolivia against Juan Carballo, a Uruguayan citizen and Kodak's newly appointed distributor in Bolivia, for a series of crimes, including "falsifying documents, espionage against Casa Kavlin, stealing Casa Kavlin's clients," representing a "fictitious and unregistered corporation," failing to register with tax collection agencies and failing to secure a necessary work permit. 978 F.Supp. at 1080. In response to Defendants' motion to dismiss on forum non conveniens grounds, Plaintiffs showed that counsel for Casa Kavlin was the uncle and godfather of Judge Grover Najero Quiroga's illegitimate child and that counsel had used his connections to have the case assigned to Judge Najero. Judge Najero had Carballo incarcerated under horrific conditions in a Bolivian jail to force Kodak to make Casa Kavlin its exclusive distributor in Bolivia. *Id.* at 1081. Additionally, Carballo, his counsel and two other Kodak employees were tried and convicted in absentia for sabotage and sentenced to five years in prison by another judge who was the ex-husband of Casa Kavlin's counsel's sister. *Id.* at 1081. Plaintiffs have failed to show that, were this action re-filed in Argentina, Defendants would similarly manipulate the Argentine justice system to their advantage. Plaintiffs even concede

that there is no evidence of corruption in the criminal proceeding.

This Court joins the Eleventh Circuit, other federal district courts and the Florida state courts in determining that Argentina is an adequate forum. *See Satz,* 244 F.3d at 1279 (Argentina an adequate forum); *Hidrovia, S.A. v. Great Lakes Dredge & Dock Corp.,* 2003 WL 2004411, at *2 (same); *Mastercard Int'l v. Argencard Sociedad Anonima,* No. 01 CIV. 3027(JKG), 2002 WL 432379, at *7 (S.D.N.Y., Mar, 20, 2002) (same); *Aerolineas Argentinas, S.A. v. Gimenez,* 807 So.2d 111, 114 (Fla. 3d DCA), *rev. denied,* 828 So.2d 386 (Fla.2002).

## B.   Private Interests of the Litigants

■ The next step in the forum non conveniens inquiry is weighing the balance of factors relating to the relative convenience of the litigants. The factors include the "ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the costs of obtaining attendance of willing, witnesses … and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Leon,* 251 F.3d at 1314 (quoting *Gulf Oil Co. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)).

■ "Perhaps the most important 'private interest' of the litigants is access to evidence." *Ford v. Brown,* 319 F.3d 1302, 1308 (11th Cir.2003). "A correct 'private interest' analysis begins with the elements of the plaintiff's causes of action. The court must then consider the necessary evidence required to prove and disprove each element. Lastly, the court should make a reasoned assessment as to the likely location of such proof." *Id.* At issue in this case is whether Pusso's conduct conformed with the standards governing

Argentine securities brokers and whether BSEC sufficiently distanced itself from Pusso. Plaintiffs argue that the only Argentine witnesses are Pusso, Rossi, de las Carreras and "other Fleet employees." (Response, p. 19.) Aside from themselves and the IBOM Defendants, Plaintiffs identify only the four *Shinitzky–Astel* Plaintiffs as non-Argentine witnesses. Plaintiffs note that Pusso, Rossi and Marcelo de las Carreras, a BSEC director, gave depositions in *Shinitzky–Astel,* but the Court finds it hard to believe that Plaintiffs would be willing to so limit their discovery of these witnesses.[8] Plaintiffs ignore the fact that 18 banks and corporate entities and 42 individuals from whom evidence was collected in the criminal proceeding are located in either Argentina or Uruguay. (Reply, Ex. 24.) Other witnesses located in Argentina include other customers who claim to have been defrauded by Pusso, Pusso's assistants, representatives of the Argentine Securities Commission and the Buenos Aires Stock Exchange and BSEC personnel who worked with Pusso. The witnesses knowledgeable about Argentine brokerage rules and practices are located in Argentina. *See Vadino v. Banco de Entre Rios,* 86 F.3d 1165, No. 95–55170, 1996 WL 279854, at *3 (9th Cir. May 10, 1996) (private interests favor Argentina when most bank witnesses lived there and cost to bring to U.S. would be significant); *Magnin v. Teledyne Continental Motors,* 91 F.3d 1424, 1430 (11th Cir.1996) (dismissal to France appropriate when witnesses were located in France, spoke French and would not be subject to compulsory process). Evidence relating to alleged shortfalls in Pusso's accounts, including the testimony of other supposed victims, and Pusso's alleged transferring client funds from account to account is also located in Argentina. *See Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 952 (11th Cir.1997) (forum non conveniens dismissal proper when plaintiff alleges international banking scheme and documents and witnesses were abroad).

Argentina's only means of compelling unwilling witnesses to testify in aid of U.S. proceedings is the foreign letter rogatory process, which Professor Rosenn estimates could last up to three years. (Rosen Decl. ¶ 32.) If this case were adjudicated in Argentina, Plaintiffs could use the Argentine rules of procedure to compel witness testimony and evidence production. *Id.* Plaintiffs could compel testimony and documents from unwilling U.S. witnesses pursuant to 28 U.S.C. § 1782, which provides that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." *See Proyectos Orchimex de Costa Rica v. E.I. duPont Nemours & Co.,* 896 F.Supp. 1197, 1202–03 (M.D.Fla.1995) (ability to obtain evidence in U.S. pursuant to 28 U.S.C. § 1782 supports dismissal).

Even the letter rogatory process would not allow discovery of information relating to Pusso and BSEC's brokerage practices, however. Article 8 of Argentine Law No. 18.771 provides that "[i]nformation collected by the National Securities Commission powers of inspection is secret. Judges shall reject ex officio all requests for such information from the Commission, except in criminal proceedings for common crimes directly linked to the facts being investigated." (Rosenn Decl. ¶ 33.) Article 46

---

8. BSEC and FLEET claim that these depositions deal only with jurisdictional issues, not facts, thereby making them even more useless to Plaintiffs. BSEC and FLEET have not provided the Court with the depositions for review, however.

imposes a similar duty on securities brokers: "Stock brokers shall keep secret the transactions they carry out for third parties, as well as their names. They may be relieved of this obligation only by a judicial decision issued in a criminal proceeding linked to these transactions or to third parties related to such transactions." *Id.* ¶ 34. Thus, only an Argentine court pursuing a criminal investigation related to the transactions in question may lift BSEC and Pusso's duty of confidentiality. *Id.* ¶ 35. Conveniently, this case presents exactly this scenario. Once the brokerage documents are disclosed in the criminal case, they will be available to any Argentine civil court. *Id.* ¶ 36. In contrast, were this action to remain here, even an order from this Court could not lift the confidentiality restrictions. *Id.* ¶ 35. Were this Court to issue such an order, Pusso, BSEC and FLEET would likely file an interlocutory appeal of the decision.

Plaintiffs also argue that Argentine courts will not be able to obtain records relating to Dr. Warter's Bahamian corporations because Argentina, unlike the U.S., has not entered into a Mutual Legal Assistance Treaty with the Bahamas. This argument is a red herring, as the U.S.-Bahamian treaty solely relates to criminal matters. (Reply, Ex. 25.)

Plaintiffs urge this Court to adopt the Fifteenth Circuit's reasoning in *Shinitzky–Astel*, which held that the private interests of the litigants counseled against dismissal on forum non conveniens grounds. *Shinitzky–Astel* is distinguishable on a variety of grounds, however. A greater number of the *Shinitzky–Astel* witnesses resided in the U.S. than in the instant case. (Response to *Shinitzky–Astel* Motion to Dismiss, p. 5.) The *Shinitzky–Astel* Court

even noted that dismissal to Argentina would impede the collection of evidence from Dr. Warter, a factor not present here. (*Shinitzky–Astel* Order, ¶ 3.) *Shinitzky–Astel* noted that several FLEET employees were willing to testify in the U.S., but failed to address the implications of their confidentiality obligations under Argentine law. *Id.* *Shinitzky–Astel* ruled that the moving Defendants had failed to demonstrate a means of compelling unwilling U.S. witnesses to testify in Argentina, but here, BSEC and FLEET have noted that a U.S. federal court may require such testimony pursuant to 28 U.S.C. § 1782. *Id.* The state court ruling also deemed Argentina's filing fee of three percent of claimed damages a financial hardship on Plaintiffs, but courts have since held that Argentina's filing fee does not render Argentina an inadequate forum,[9] nor have Plaintiffs in this case complained of the financial burdens of filing suit in Argentina. *Id.* The *Shinitzky–Astel* ruling also concluded that resolution of the case in Argentina would not occur prior to the conclusion of the criminal prosecution of Pusso and could therefore last 20 years. *Id.* As this Court previously explained, related civil and criminal actions may proceed simultaneously, but a final judgment in the criminal action must precede a final judgment in the civil action. It is estimated that the criminal action will concluded between November 2005 and May 2006. Finally, *Shinitzky–Astel* held that transfer to Argentina would require Plaintiffs to litigate the action on two continents. *Id.* Even if this Court were to retain the instant case, Plaintiffs would still be involved in intercontinental legal proceedings in light of the criminal case against Dr. Warter.

---

**9.** *See Aerolineas Argentinas*, 807 So.2d at 114 (three percent tax does not render Argentina inadequate forum); *Satz*, 244 F.3d at 1283 (same); *Vadino*, 1996 WL 279854, at *2 (same).

This litigation will be costly and time consuming wherever it is resolved. Nevertheless, the Court finds that the balance of the private interest factors weighs in favor of dismissal. Although courts usually afford deference to a Plaintiff's choice of forum, when "an American plaintiff chooses to invest in a foreign country and then complains of fraudulent acts occurring primarily in that country, the plaintiff's ability to rely upon citizenship as a talisman against forum non conveniens dismissal is diminished." *Sussman v. Bank of Israel,* 801 F.Supp. 1068, 1073 (S.D.N.Y.1992), *aff'd,* 990 F.2d 71, 71–72 (2d Cir.1993). Dr. Warter, the only U.S. citizen Plaintiff, is already involved in legal proceedings in Argentina. Although resolution of the Argentine criminal prosecution will not dispose of the issues presented in this civil suit, the issues and evidence relevant to both cases are sufficiently similar to warrant trial in the same forum. The prosecution of this action in Florida would still require multiple trips to Argentina to conduct discovery. Were this action to proceed here, Plaintiffs would lack the means of obtaining evidence relating to Pusso and BSEC's brokerage practices. Finally, Plaintiffs will be better able to enforce an Argentine judgment in Argentina. In light of these factors, the Court finds that the re-filing of this action in Argentina will best serve the private interests of the litigants.

## C. Public Interests

■ Public interest factors are considerations that affect the convenience of the competing forums. *See Piper Aircraft Co.,* 454 U.S. at 241, 102 S.Ct. at 258. The primary factors for consideration are (1) "the sovereigns' interests in deciding the dispute," (2) "the administrative burdens posed by trial," and (3) "the need to apply foreign law." *Satz,* 244 F.3d at 1284 (quotation omitted). Each of these factors warrants dismissal.

■ Plaintiffs argue that the U.S. has a "definite relation" to this action because it involves an alleged fraud perpetrated against one of its citizens. (Response, p. 20.) Pursuant to this standard, however, the U.S. has no greater interest in this action than Uruguay, Gulden's place of incorporation. Plaintiffs also cite *Herbstein v. Bruetman,* 743 F.Supp. 184, 189 (S.D.N.Y.1990) for the proposition that the U.S. has a significant interest in "wrongs committed on its soil, and in deterring similar actions by other individuals and corporations." *Herbstein* is distinguishable, as Plaintiff alleged that the fraudulent misrepresentation occurred in New York City. Consequently, documentary evidence of the alleged fraud also existed in the U.S. *Id.* at 189. Here, the alleged fraud arose out of contacts entered into in Argentina. Dr. Warter met Pusso in Buenos Aires, where the Gulden account exists. The wrong, and the evidence relating to it, are in Argentina. At issue in this case is whether Pusso, an Argentine, properly represented himself as an agent of BSEC, an Argentine securities brokerage, for the purpose of selling Argentine securities. Indeed, the criminal proceeding against Dr. Warter and Pusso demonstrates that Argentina has the more significant interest in resolving this dispute.

This Court's retention of this case would subject it to severe administrative costs. Factors relating to administrative costs include the burden this case will place on the Court's limited resources, the tax dollars that will be consumed and the burden on members of a jury in a forum only remotely related to the dispute. *See In re Union Carbide Corp.,* 634 F.Supp. 842, 861 (S.D.N.Y.1986) ("The substantial administrative weight of this case should be centered on a court with the most significant

contacts with the event."); *Postol v. El–Al Israel Airlines, Ltd.,* 690 F.Supp. 1361, 1365 (S.D.N.Y.1988) ("The administrative burden of this case should be on the jurisdiction that has the most significant contacts with the alleged occurrences."). Were this Court to retain jurisdiction over this matter, it will spend its time and U.S. taxpayer money to adjudicate a matter in which a Uruguayan corporation can sue primarily Argentine citizens and companies for conduct occurring in Argentina. *See Ministry of Health v. Shiley, Inc.,* 858 F.Supp. 1426, 1442 (C.D.Cal.1994) (where parties were Canadian, "it is reasonable for Canada to incur the expense of a trial involving its own citizens"); *Tannenbaum v. Brink,* 119 F.Supp.2d 505, 513 (E.D.Pa. 2000) (local citizenry should not be burdened with resolving matter involving French laws, occurring in French territory and affecting non-residents).

Third, Plaintiffs' claims may require application of Argentine or Uruguayan law. The Second Amended Complaints states that

> [U]nder Uruguayan law and/or Argentinian law, pursuant to Federal Rule of Civil Procedure 44.1, all of the acts herein occurred within the specified applicable Statute of Limitations and the Complaint filed herein is filed within the appropriate Uruguayan and/or Argentinian Statutes of Limitations for the causes of action alleged herein.

(2d Am.Compl.¶ 2.) "It is not clear from the Second Amended Complaint ... to what extent the Plaintiffs are pleading causes of action under domestic law or foreign law." (Rosenn Decl. ¶ 22.) Plaintiffs' Response to the motion to dismiss does not dispute that Argentine law applies to this case. Resolution of this action will require determination of whether Pusso was BSEC's agent and whether BSEC, FLEET and Rossi adequately remedied

Pusso's alleged fraud. Both of these issues hinge on the regulations applicable to Argentine securities brokerage houses. Even the possibility that foreign law applies to a dispute is sufficient to warrant dismissal on forum non conveniens grounds. *See Proyectos,* 896 F.Supp. at 1204 (whether foreign law actually applied, keeping the case in the U.S. "would ensnare [the] court in a difficult choice of law determination"); *Gulf Oil Corp.,* 330 U.S. at 509, 67 S.Ct. at 843 (proper to have court that "is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself"); *Sigalas v. Lido Maritime, Inc.,* 776 F.2d 1512, 1519 (11th Cir. 1985) ("The need to resolve and apply foreign law should 'point [the trial court] towards dismissal' ") (quoting *Piper Aircraft Co.,* 454 U.S. at 251, 102 S.Ct. at 263). Plaintiffs again urge this Court to adopt *Shinitzky–Astel's* reasoning with respect to the public interest factors, but *Shinitzky–Astel* is distinguishable in that Plaintiffs' claims rested on Florida law.

**D. Ability to Reinstate Action in Argentina**

If Plaintiffs are unable to reinstate this action in Argentina and such decision is affirmed by the highest court in Argentina, then this Court will reactivate this action here. *Ford,* 319 F.3d at 1310. The Court reminds BSEC and FLEET that they have consented to Argentine jurisdiction, have consented to receive service of process from the Argentine court by personal service or registered mail, and that they have waived any defenses based on the statute of limitations, laches or the passage of time from the date of the filing of the Amended Complaint. Attachment of these conditions neither "destroy[s] finality" nor "leaves the case pending in the District

Court." *Leon,* 251 F.3d at 1316 (citing *Sigalas,* 776 F.2d at 1515–16).

## IV. *CONCLUSION*

THE COURT having considered the parties' written submissions and the exhibits attached thereto, hereby

ORDERS AND ADJUDGES that BSEC and FLEET's Motion to Dismiss on forum non conveniens grounds, filed June 4, 2004 [DE 72] is GRANTED. This action is DISMISSED IN ITS ENTIRETY for re-filing in Argentina. Should Plaintiffs be unable to reinstate their action and the highest Argentine judicial tribunal reaffirms such decision, the Court will reactivate this action upon notice from the parties. The Clerk of Court shall CLOSE this case and DENY any pending motions as MOOT.

DONE AND ORDERED.